IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARRETT DAY LLC, et al., :
    Plaintiffs,
  v. : Case No. 3:15-cv-36
INTERNATIONAL PAPER CO., et al., : JUDGE WALTER H. RICE
    Defendants. :

DECISION AND ENTRY SUSTAINING DEFENDANT
BPM PAPER, INC.'S MOTION TO DISMISS (DOC. #87),
WITH PREJUDICE

After spending more than $1.7 million to clean up hazardous waste at the site of a former paper mill, Plaintiffs Garrett Day LLC, and Ohio Development Services Agency ("ODSA"), filed suit against more than a dozen defendants, seeking cost recovery and/or contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(f). Plaintiffs also seek recovery under Ohio's Voluntary Action Program ("VAP"), Ohio Revised Code § 3746.23, and through a common law nuisance action.

Plaintiffs maintain that BPM Paper, Inc. ("BPM Paper"), is liable as a successor-in-interest to Badger Paper Mills, Inc., and BPM, Inc. This matter is currently before the Court on Defendant BPM Paper, Inc.'s Motion to Dismiss, Doc. #87.

I.     **Background and Procedural History**

On July 1, 2010, Plaintiff Garrett Day purchased the site of a former paper mill in Dayton, Ohio (the "Site"). According to the Complaint, the Site was owned by numerous paper companies from 1896 through 2001. When Garrett Day purchased the Site, it "contained structurally unsafe structures, was no longer fit to be habitable, and was a hazard and menace to the public." Doc. #1, PageID#7. Plaintiffs allege that, as a result of the paper production process, the soil at the Site was contaminated with a variety of hazardous substances, including asbestos, trichloroethylene ("TCE"), polycyclic aromatic hydrocarbons ("PAHs") and polychlorinated biphenyls ("PCBs"). After purchasing the Site, Garrett Day worked with ODAS and the City of Dayton, spending more than $1.7 million to investigate the nature and extent of the contamination, and to remediate the Site. *Id.* at PageID##11-12.

Plaintiffs now seek to recover their response costs from more than a dozen entities that owned or operated a facility at the Site when the alleged disposals of hazardous waste occurred, or from those entities' successors-in-interest. Plaintiffs seek to hold BPM Paper liable as a successor-in-interest to Badger Paper Mills, Inc., and BPM, Inc. BPM Paper has moved to dismiss all claims against it, pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. #87.

## II. 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

In ruling on a motion to dismiss, if the Court considers "matters outside the pleadings," it is generally required to treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may take judicial notice of matters of public record, including other court proceedings, without converting the motion into a motion for summary judgment. *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999); *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

### III. Analysis

As noted above, numerous entities allegedly contributed to contamination at the Site of the former paper mill. Plaintiffs seek to impose liability on BPM Paper, Inc. ("BPM Paper"), as a successor-in-interest to Badger Paper Mills, Inc. ("Badger

Paper Mills"), and BPM, Inc. ("BPM"), for activities that occurred in 1992 and 1993.

According to the Complaint, Badger Paper Mills acquired the Site in April of 1992, and sold it to Dayton Paper Corporation in 1993. Doc. #1, PageID#7. Plaintiffs allege that "[t]hrough Badger Paper Mills, Inc., and directly, BPM [Paper] owned and operated the Site from 1992 to 1993." *Id.* at PageID#8. They further allege that, "[u]pon information and belief, Badger Paper Mills dissolved in 2010 and was reformulated as BPM, Inc. ("BPM")." *Id.* at PageID#7.

In its Motion to Dismiss, BPM Paper clarified its corporate lineage as follows. BPM, Inc., was formed in 2005 for the purpose of acquiring assets of Badger Paper Mills. On November 14, 2005, BPM, Inc., entered into an Asset Purchase Agreement ("APA") with Michael S. Polsky, as Receiver of Badger Paper Mills. Doc. #87-1, PageID##667-82.[1] The following day, the Marinette County Circuit Court, of the State of Wisconsin, issued an Order Approving the Sale. Doc. #87-2, PageID##684-89. According to that Order, BPM was one of four bidders at a public auction that lasted more than ten hours. *Id.* at PageID#685.

Reciting the terms of the APA, the Order states that "BPM and its assigns of the Purchased Assets shall not be liable for any of [Badger Paper Mills'] debts, liabilities, or obligations, except those expressly assumed in the Sale Agreement

---

[1] BPM Paper notes that Badger Paper Mills had conveyed the Site itself to Dayton Paper Corporation more than ten years earlier, in 1993.

5

. . ." *Id.* at PageID#688. The APA expressly excluded successor liability for all environmental claims, including those arising under CERCLA. Doc. #87-1, PageID#671.

BPM Paper further explains that it was formed in June of 2011 under the name Badger Paper Mills, Inc. On May 22, 2013, it changed its name to BPM Paper, Inc., and merged with BPM, Inc. The surviving corporation is BPM Paper, Inc. Doc. #87-3, PageID##709-15; Doc#87-4, PageID##717-19.[2]

BPM Paper argues that dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6), because Plaintiffs have made only conclusory allegations that that BPM Paper is a successor-in-interest to Badger Paper Mills and BPM. In the alternative, BPM Paper argues that, even if Plaintiffs' allegations are sufficient to raise a plausible inference of successor liability, Plaintiffs' claims are barred by *res judicata*, given that the Marinette County Circuit Court issued an Order stating that neither BPM nor its assigns is liable for any of Badger Paper Mills' liabilities, other than those expressly assumed.

In their Memorandum in Opposition to BPM Paper's Motion to Dismiss, Plaintiffs argue that the corporate lineage of BPM Paper, as fleshed out in the Motion to Dismiss, strongly suggests that BPM, Inc., which later became BPM

---

[2] Because the Marinette County Circuit Court Order is a public record, the Court may consider it without converting the motion to dismiss into a motion for summary judgment. *Jones*, 521 F.3d at 562. Likewise, the APA, which was filed with that court, *see* Doc. #87-2, PageID#685, and the corporate filings submitted by BPM Paper, Docs. ##87-3, 87-4, are public records that may be considered in ruling on the motion.

6

Paper, was simply a continuation of Badger Paper Mills. Plaintiffs maintain that BPM Paper is liable for the contamination under a *de facto* merger theory of successor liability. To the extent that the Court finds that the allegations in the original Complaint are insufficient to state a claim of successor liability, Plaintiffs seek leave to amend the Complaint to include additional factual allegations.

BPM Paper's Motion to Dismiss states that the claims against it "were discharged in bankruptcy. . ." Doc. #87, PageID#663. Plaintiffs point out, however, that Badger Paper Mills did not file for bankruptcy. Instead, a Receiver was appointed, who later entered into an APA with BPM, Inc. Citing *In re Mader's Store for Men, Inc.*, 254 N.W.2d 171, 180 (Wis. 1977), Plaintiffs argue that, in contrast to bankruptcy proceedings, state receivership proceedings do not, and cannot, operate to extinguish a debtor's liability. Plaintiffs also deny that their claims are barred by the doctrine of *res judicata*.

A. **Effect of Disclaimer in APA and the Marinette County Circuit Court Order**

The Court first addresses the effect of the provision in the APA, that BPM would not be liable, as a successor-in-interest, for any environmental claims that might be asserted against Badger Paper Mills, including those arising under CERCLA. As noted, the Marinette County Circuit Court approved the sale of assets, and stated that BPM would be liable only for those obligations expressly assumed.

7

Neither the APA nor the Circuit Court Order is dispositive on the question of BPM Paper's liability as a successor-in-interest. The doctrine of *res judicata* does not bar Plaintiffs' claims. Under that doctrine, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979). The question of whether BPM could be held liable for environmental claims arising out of Badger Paper Mills' activities on the Site was not actually litigated in the receivership proceedings. The court simply recited the terms of the parties' agreement. In addition, neither Plaintiffs nor their privies were parties to the receivership proceedings. Accordingly, the doctrine of *res judicata* does not bar Plaintiffs' claims in this lawsuit. *See Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (setting forth elements of *res judicata*).

Moreover, under the circumstances presented here, the purported disclaimer of successor liability in the APA is not determinative. *See Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp.*, 195 B.R. 716, 733 (N.D. Ind. 1996) ("the fact that the Purchase Asset Agreement explicitly states that Clark will not assume any environmental liability arising from the operation of the facilities prior to the sale does not affect a determination of liability under CERCLA.").

"CERCLA is a remedial environmental statute with two essential purposes: 1) to provide swift and effective response to hazardous waste sites; and 2) to place the cost of that response on those responsible for creating or maintaining the hazardous condition." *United States v. Mexico Feed and Seed Co., Inc.*, 980 F.2d

478, 486 (8th Cir. 1992). In light of these goals, liability under CERCLA extends to corporate successors. *Id.* at 487 (holding that, in enacting CERCLA, Congress did not intend for corporations to be able "to evade their responsibility by dying paper deaths, only to rise phoenix-like from the ashes, transformed, but free of their former liabilities."). *See also In re Acushnet River & New Bedford Harbor Proceedings*, 712 F. Supp. 1010, 1014 (D. Mass. 1989) ("A paper transaction should not furnish a shield suitable to deflect CERCLA liability for environmental transgressions preceding the transaction.").

The parties agree that Ohio corporation law governs the question of successor liability under CERCLA. *See City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994). As a general rule, "the purchaser of a corporation's assets is not liable for the debts and obligations of the Seller corporation." *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993). There are, however, four exceptions to this rule.

> A successor corporation may be held liable when "(1) the buyer expressly or impliedly agrees to assume such liability; "(2) the transaction amounts to a *de facto* consolidation or merger; "(3) the buyer corporation is merely a continuation of the seller corporation; or "(4) the transaction is entered into fraudulently for the purpose of escaping liability." *Flaugher, supra*, 30 Ohio St.3d at 62, 30 OBR at 167, 507 N.E.2d at 334.

*Id.* If one or more of these exceptions applies, the purchaser of the assets will be held liable for the predecessor corporation's obligations regardless of any purported agreement to the contrary.

9

### B. Effect of Intervening Receivership

BPM Paper also argues that because BPM purchased Badger Paper Mill's assets from a Receiver, this disrupts the continuity of the transaction, and bars any finding of successor liability. In support, BPM Paper cites to *104, Inc. v. Liquor Control Commission*, 233 N.W.2d 622 (Ohio Ct. Common Pleas 1967), an administrative appeal from an order of the Liquor Control Commission. The court held that, because the appellant purchased certain assets from a receiver, rather than directly from the holder of a liquor license, the appellant was not personally liable for an assessment of delinquent sales taxes.

In that case, the intervening receivership was dispositive, because the statute at issue, Ohio Revised Code § 5739.14, imposed liability only on the "successor" of the person who owed the sales tax. The court held that, because the appellant was the "successor" of the receiver, not the "successor" of the previous permit holder, it was not liable. *Id.* at 624. Because *104, Inc.* involved a matter of statutory interpretation, it does not stand for the broader proposition that an intervening receivership necessarily bars a finding of successor liability. Nevertheless, in some instances, an intervening receivership may make it more difficult to establish successor liability.

### C. Sufficiency of Allegations Establishing Successor Liability

In their Memorandum in Opposition to Defendant's Motion to Dismiss, Doc. #112, Plaintiffs argue that the 2005 APA resulted in a *de facto* merger between

10

Badger Paper Mills and BPM, which renders BPM Paper liable as a successor corporation under CERCLA.

"A *de facto* merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Welco*, 617 N.E.2d at 1134. The four hallmarks of a *de facto* merger include:

> (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.* No single factor is determinative, and a *de facto* merger may be found even if not all hallmarks are present. *Cytec Indus., Inc. v. B.F. Goodrich Co.*, 196 F. Supp.2d 644, 658 (S.D. Ohio 2002).

At issue in the present motion is whether Plaintiffs have alleged sufficient facts to support the existence of a *de facto* merger. They clearly have not. The Complaint alleges only that "[t]hrough Badger Paper Mills, Inc., and directly, BPM owned and operated the Site from 1992 to 1993," and "[u]pon information and belief, Badger Paper Mills dissolved in 2010 and was reformulated as BPM, Inc. ("BPM")." Doc. #1, PageID##7-8. As noted above, in its Motion to Dismiss, BPM Paper set the record straight and filled in the gaps in the corporate lineage, explaining the receivership, the APA, and BPM's subsequent merger with BPM Paper.

In their Memorandum in Opposition to the Motion to Dismiss, Plaintiffs requested leave to amend their Complaint to include more specific allegations to support a claim of a *de facto* merger.[3] The Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Based on the public records attached to the parties' briefs, any amendment in this case would be futile.

As noted above, there are four hallmarks of a *de facto* merger. The first is "the continuation of the previous business activity and corporate personnel." *Welco*, 617 N.E.2d at 1134. BPM Paper concedes that, following the purchase of assets, BPM continued all previous business activity of Badger Paper Mills, absorbing the same customers, and retaining the same employees. Nevertheless, BPM Paper notes that public records prove that BPM did not employ *any* of Badger Paper Mills' former officers or directors. Doc. #116-7. This weighs against a finding of a *de facto* merger.

Citing *Bondex International, Inc. v. Hartford Accident and Indemnity Co.*, No. 1:03-cv-1322, 2009 WL 8632648, at *9 (N.D. Ohio Feb. 10, 2009), Plaintiffs argue that the lack of continuity of corporate personnel is not necessarily dispositive where there is a clear continuity of business activity. As BPM Paper

---

[3] Plaintiffs further argue that, at a minimum, they should be entitled to conduct discovery on the question of whether there was a *de facto* merger. However, discovery is not available absent factual allegations that give rise to a plausible claim. *Iqbal*, 556 U.S. at 678-79.

notes, however, *Bondex* is factually distinguishable because the predecessor corporation in that case was absorbed and became a division of the successor corporation. *Id.* In contrast, there was no such relationship between Badger Paper Mills and BPM, Inc.

The second hallmark of a *de facto* merger is "a continuity of shareholders resulting from a sale of assets in exchange for stock." *Welco*, 617 N.E.2d at 1134. The *Welco* court noted that one court has held that a transfer of assets for stock is the "*sine qua non*" of a *de facto* merger. *Id.* Plaintiffs do not contend that Badger Paper Mills or any of its shareholders received stock in BPM in exchange for the sale of assets. Plaintiffs, however, argue that this is not an absolute requirement. The relevant question is whether there is a "nexus between the predecessor corporation and successor corporation that the continuity of shareholders 'hallmark' seeks to require." *Cytec Indus.*, 196 F. Supp.2d at 659. *See also Bondex*, 2009 WL 8632648, at *9 (finding a sufficient nexus despite the absence of continuity of shareholders).

BPM Paper again notes that *Bondex* and *Cytec* are factually distinguishable. In each of those cases, the predecessor corporation was absorbed and became a division of the successor corporation, supporting a finding of a *de facto* merger. *Id.*; 196 F. Supp.2d at 659. There is no similar nexus in this case. BPM purchased some of Badger Paper Mills' assets at public auction, and assumed some of its liabilities. However, the shareholders of Badger Paper Mills were not given any stock in BPM as part of the transaction.

13

Moreover, there was no substantial continuity of shareholders. The only person who owned stock in both companies is James D. Azzar. Azzar is the current President and sole shareholder of BPM Paper. However, public records show that, at the time that BPM purchased the assets from the Receiver, Azzar owned only a 25.04% interest in Badger Paper Mills. Docs. ##116-1, PageID##889-890. In a somewhat similar case, the court concluded that there was no *de facto* merger where there was no stock-for-assets transaction, and where two stockholders, who owned 100% of the purchasing corporation, had collectively owned only 22% of the selling corporation. *See Kemper v. Saline Lectronics*, 366 F. Supp.2d 550, 555-56 (N.D. Ohio 2005).

Because there was no stock-for-assets transaction, and because there was no substantial continuity of shareholders, the Court finds that the second hallmark—deemed to be of considerable importance—also weighs against a finding of a *de facto* merger.

The third hallmark that must be considered is "the immediate or rapid dissolution of the predecessor corporation." *Welco*, 617 N.E.2d at 1134. Here, although the sale of assets occurred in 2005, Badger Paper Mills, Inc., was not dissolved until 2010. This hallmark therefore also weighs against a finding of a *de facto* merger.

Plaintiffs nevertheless argue that, because Badger Paper Mills continued to exist only as a shell corporation, devoid of any assets, this hallmark should be deemed satisfied. In support, they cite to *Delphi Automotive Systems, LLC v.*

14

*Universal Pallets, Inc.*, No. 2:10-cv-113, 2011 WL 3297239, at *5 (S.D. Ohio Aug. 1, 2011), in which the court held that, where the former corporation continued to exist, but did not function, and did not retain enough assets to satisfy the claims of creditors, the third hallmark was satisfied.

BPM Paper argues that this case is distinguishable because the sale of assets took place in the context of receivership proceedings. Badger Paper Mills was not dissolved or reorganized in order to avoid liability. Rather, it was placed in receivership as a result of financial difficulties. The Receiver decided to liquidate corporate assets at public auction in order to pay outstanding corporate debts. BPM Paper notes that, if dissolution of the predecessor corporation in this situation is deemed to support the existence of a *de facto* merger, this would chill acquisition of corporate assets in the context of receivership proceedings. The Court agrees.

The final hallmark is "the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." *Welco*, 617 N.E.2d at 1134. BPM Paper cites to the limited nature of the liabilities assumed by BPM. Nevertheless, it appears that BPM did, in fact, assume all of the liabilities and obligations that were necessary to continue operating the paper mill. In the Court's view, this fourth factor weighs in favor of a finding of a *de facto* merger.

Nevertheless, as discussed above, public records submitted by BPM Paper indicate that none of the other three hallmarks could be satisfied. Accordingly, the

Court finds that allowing Plaintiffs to amend their Complaint, to assert additional factual allegations in support of their claim of a *de facto* merger between Badger Paper Mills and BPM, would be futile.

IV.     **Conclusion**

For the reasons set forth above, the Court SUSTAINS BPM Paper, Inc.'s Motion to Dismiss, Doc. #87, and dismisses all claims against it with prejudice.

Date: February 11, 2016                              */s/ Walter H. Rice*
                                                     WALTER H. RICE
                                                     UNITED STATES DISTRICT JUDGE