IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARRETT DAY LLC, *et al.*,        :

      Plaintiffs,

     v.                     :      Case No. 3:15-cv-36

INTERNATIONAL PAPER         JUDGE WALTER H. RICE
COMPANY, *et al.*,

      Defendants.         :

---

DECISION AND ENTRY SUSTAINING DEFENDANT INTERNATIONAL
PAPER COMPANY'S MOTION TO DISMISS (DOC. #75); SUSTAINING
MOTION TO DISMISS BY DEFENDANTS FOX VALLEY
CORPORATION, FOX RIVER PAPER COMPANY, FOX RIVER PAPER
SALES COMPANY, AND NEENAH PAPER, INC. (DOC. #92);
DISMISSING PLAINTIFFS' CERCLA CLAIMS WITHOUT PREJUDICE;
DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER
STATE LAW CLAIMS; GIVING PLAINTIFFS 20 DAYS TO SEEK LEAVE
TO FILE AN AMENDED COMPLAINT; CASE TO REMAIN PENDING
UNTIL THAT TIME; VACATING MARCH 7, 2016, CONFERENCE CALL

---

After spending more than $1.7 million to clean up hazardous waste at the

site of a former paper mill in Dayton, Plaintiffs Garrett Day LLC, and Ohio

Development Services Agency ("ODSA" or "DSA"), filed suit against more than a

dozen defendants, seeking cost recovery and/or contribution under the

Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. § § 9607(a) and 9613(f).  Plaintiffs also seek recovery

under Ohio's Voluntary Action Program ("VAP"), Ohio Revised Code § 3746.23,

and bring a common law nuisance claim.

This matter is currently before the Court on Defendant International Paper Company's ("IPC") Motion to Dismiss, Doc. #75, and a Motion to Dismiss by Defendants Fox Valley Corporation, Fox River Paper Company, Fox River Paper Sales Company (collectively "Fox River"), and Neenah Paper, Inc. ("Neenah Paper"), Doc. #92.

I.      **Background and Procedural History**

On July 1, 2010, Plaintiff Garrett Day purchased the site of a former paper mill in Dayton, Ohio (the "Site").  At that time, according to the Complaint, "the Site contained structurally unsafe structures, was no longer fit to be habitable, and was a hazard and menace to the public."  Doc. #1, PageID#7.  Plaintiffs allege that, over the years, numerous hazardous chemicals, used in the paper-making process, were released and/or disposed of at the Site.  Asbestos, trichloroethylene ("TCE"), polycyclic aromatic hydrocarbons ("PAHs"), and polychlorinated biphenyls ("PCBs") were found at the Site.  *Id.* at PageID##10-11.

The Complaint alleges that, after purchasing the Site, Garrett Day, in conjunction with ODSA and the City of Dayton, identified potential sources of contamination, investigated the nature and extent of that contamination, prepared a remedial plan, and conducted remedial activities, in accordance with VAP standards and the National Contingency Plan ("NCP").  Plaintiffs allegedly spent more than $1.7 million in connection with these efforts.  A "no further action" letter was issued on February 13, 2012, and a Covenant Not to Sue was granted

2

on July 5, 2012. *Id.* at PageID##11-13.  In 2015, the City of Dayton allegedly assigned to Garrett Day and ODSA all claims related to the Site. *Id.* at PageID#2.

According to the Complaint, the Site was owned and operated by numerous paper companies from 1896 through 2001, at the time the release of hazardous substances allegedly occurred. *Id.* at PageID##5-7.  Plaintiffs now seek to recover their costs from more than a dozen of those entities or their successors-in-interest. Plaintiffs seek necessary response costs under § 107(a) of CERCLA, contribution under § 113(f) of CERCLA, and/or VAP response costs under Ohio Revised Code § 3746.23.  They also assert a common law nuisance claim.

Defendants IPC, Fox River and Neenah Paper are just a few of the entities sued.  Plaintiffs maintain that IPC's predecessor companies owned and operated the Site from 1918 through 1972, and that Fox River, Neenah Paper and their predecessor companies owned and operated the Site from 1972 to 1992. *Id.* at PageID#8.  These defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Docs. ##75, 92.

## II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

3

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions

4

"must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

III.    **Discussion**

Defendants each argue that Plaintiffs' Complaint is deficient in numerous respects, each warranting dismissal.  Before addressing any of the issues raised in connection with Plaintiffs' state law claims, the Court first turns to the federal CERCLA claims.

A.    **CERCLA Claims**

CERCLA was enacted to promote the timely cleanup of hazardous waste sites and to spread the cost of that cleanup among those responsible for the contamination. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 761 (6th Cir. 2014).  In this case, Plaintiffs seek recovery of response costs under § 107(a) of CERCLA and/or contribution under § 113(f) of CERCLA.

Under § 107(a), a person who incurs "necessary costs of response . . . consistent with the national contingency plan," 42 U.S.C. § 9607(a)(4)(B), may recover those response costs from other potentially responsible parties.  Under § 113(f), a person may seek contribution from other potentially responsible parties if the plaintiff: (1) has been sued under 42 U.S.C. § 9606 or 9607(a), *see* 42 U.S.C. § 9613(f)(1); or (2) has resolved its liability to the United States or a State through an administrative or judicially approved settlement, *see* 42 U.S.C. § 9613(f)(3)(B).

5

"[P]arties seeking contribution under § 113(f) must look to § 107 to establish the basis and elements of the liability of the defendants." *Kalamazoo River Study Grp. v. Menasha Corp.*, 228 F.3d 648, 656 (6th Cir. 2000) (quoting *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 350 (6th Cir. 1998)).

> A prima facie case for CERCLA recovery under § 107(a) has four elements: (1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP; and (4) the defendant is in one of four categories of potentially responsible parties.

*Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). One of those four categories of potentially responsible parties includes "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).

Here, Plaintiffs allege that hazardous substances were "released and/or disposed of" at the Site during the entire time that the paper mill was operational, from approximately 1918 to as late as 2010. Doc. #1, PageID##11-12. Pursuant to § 9607(a)(2), Plaintiffs seek to recoup $1.7 million in cleanup costs from the entities that owned or operated the paper mill during that time period, or from those entities' successors-in-interest. Defendants argue that, for several reasons, Plaintiffs have failed to state a claim upon which relief can be granted.

### 1. Owner/Operator Liability

As previously noted, CERCLA imposes liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  42 U.S.C. § 9607(a)(2). In their motions to dismiss, Defendants argue that Plaintiffs' Complaint fails to state a viable cause of action under either § 107(a) or § 113(f) of CERCLA, because the factual allegations are insufficient to support a finding that Defendants owned or operated the Site "at the time of disposal of any hazardous substance."

According to Plaintiffs, Defendant IPC and its predecessors owned or operated the paper mill from 1918-1972, and Defendants Fox River, Neenah Paper and their predecessors owned and operated the paper mill from 1972-1992.  Doc. #1, PageID#8.  Plaintiffs further allege that "[t]hrough paper-making operations, hazardous substances were released and/or disposed of at the Site," within the meaning of § 9607(a)(2), during the time periods that these Defendants owned or operated the Site.  *Id.* at PageID#12.

Plaintiffs' Complaint explains how the paper-making process evolved over the decades.  Prior to 1989, the pulp mixture was prepared off site.  Once it was brought to the Site, water was extracted from the mixture.  This water "would have included fibers and additives."[1]  *Id.* at PageID##8-9.  Beginning in 1989, all materials were prepared on site.  Plaintiffs allege that bleaching agents containing

_____

[1]  IPC correctly notes that Plaintiffs do not allege that this water contained any hazardous substances.

chlorine were used and would have been released into the air.  They further allege that the recycled waste containing chromium and barium would have been released from the waste during the de-inking process.  *Id.* at PageID##9-10.

More generally, Plaintiffs allege that "[t]hroughout the operational history of the Site, the paper production process required the use of hazardous substances and chemicals."  *Id.* at PageID#9.  The machines that were used were insulated with asbestos, and were cleaned using TCE.  *Id.* at PageID##9-10.  Releases from transformers at the Site were allegedly contaminated with PCBs.  Plaintiffs also allege that PAHs would have been released from the coal and petroleum that was burned to produce energy at the Site.  In addition, oils and greases used in operations at the Site contained PCBs.  *Id.* at PageID#11.  Plaintiffs allege that each of these hazardous substances "were either released or a threat for release from at least 1918 to as late as 2010."  *Id.*  Asbestos, TCE, PCBs, and PAHs were all found at the Site.  *Id.* at PageID##10-11.

Defendants complain that Plaintiffs have failed to identify exactly what hazardous substances were disposed of during each time period, how they were disposed of, where they were disposed of, or by whom.  A high degree of specificity, however, is not necessarily required at the pleading stage, given the lack of discovery.  *See Hobart Corp. v. Dayton Power & Light Co.*, 997 F. Supp.2d 835, 852 (S.D. Ohio 2014) (collecting cases).

More problematic is whether the facts alleged are sufficient to support a plausible claim that *any* hazardous substances were "disposed of" at the Site

during the relevant time periods, a necessary requirement for imposing liability on owners and operators.  *See* 42 U.S.C. § 9607(a)(2).  The Complaint clearly alleges that hazardous substances were *used* during the paper-making process, and that the same hazardous substances were found at the Site.

Defendants argue, however, that this is not enough.  According to Defendants, the Complaint contains nothing more than a conclusory allegation that hazardous substances were *disposed of* at the Site during the relevant time period.  Even then, Plaintiffs appear to conflate the concepts of "release" and "disposal."  The Complaint alleges that "[t]hrough paper-making operations, hazardous substances were *released and/or disposed of* at the Site . . . "  Doc. #1, PageID#12 (emphasis added).

Defendants maintain that there is a distinction to be made between "disposal" and "release."  *See Bob's Beverage, Inc. v. Acme, Inc.*, 264 F.3d 692, 697 (6th Cir. 2001) ("A Disposal is not the same as a release. . . The term 'release' is broader than Disposal.").  CERCLA generally defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)."  42 U.S.C. § 9601(22).

CERCLA borrows the narrower definition of "disposal" from the Solid Waste Disposal Act, which defines "disposal" as "the discharge, deposit, injection,

dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3). The Sixth Circuit has held that a "disposal requires evidence of 'active human conduct,' and addresses 'activity that precedes the entry of a substance into the environment.'" *Bob's Beverage*, 264 F.3d at 697 (quoting *United States v. 150 Acres of Land*, 204 F.3d 698, 705-06 (6th Cir. 2000)).[2]

For example, in *Bob's Beverage*, the court held that replacement of a septic tank did not cause a "disposal" where hazardous substances were already present and there was no evidence that any active human conduct resulted in any additional contamination. *Id.* The court also held that passive leaking of hazardous substances from 55-gallon drums left on the property by a previous owner did not constitute a "disposal." *Id.* Likewise, in *150 Acres of Land*, in determining whether the "innocent landowner" defense applied, the court held that, although there may have been a "release" when hazardous substances continued to leak

---

[2] This is contrary to the case cited by Plaintiffs, an unpublished district court case from outside the Sixth Circuit, in which the court held that "[a] disposal may occur without any volitional human participation" and "[a]ll that is required is that the hazardous substance has been released into the environment at some point during a party's control of the facility." *Am. Nat'l Bank & Trust Co. of Chicago as Tr. for Ill. Land Trust No. 120658-01 v. Harcros Chems., Inc.*, No. 95C3750, 1997 WL 281295, at *7 (N.D. Ill. May 20, 1997).

from 55-gallon drums left on the property by previous owners, the new owners could not be said to have "disposed of" hazardous substances. 204 F.3d at 706.

There are no factual allegations in the Complaint to support a finding that, as the result of "active human conduct," any hazardous substance was discharged, deposited, injected, dumped, spilled, leaked or placed into or on any land or water at the Site so that it could enter the environment. The Complaint simply alleges that hazardous substances were used in the paper-making process, and were later found at the Site. Given the Sixth Circuit's definition of "disposal," this is insufficient to state a claim of owner/operator liability under § 9607(a)(2).

Given that the same hazardous substances allegedly used in the paper-making process were later found at the Site, it could be argued, as a matter of common sense, that there must have been a "disposal" caused by some "active human conduct." However, the possibility also exists that the hazardous substances passively migrated into the soil. The Sixth Circuit has held that, absent human intervention, such passive migration does not constitute a "disposal." *Bob's Beverage*, 264 F.3d at 697; *150 Acres of Land*, 204 F.3d at 706.

Accordingly, absent any factual allegations to support a finding that hazardous substances were actually "disposed of"—as that term has been interpreted by the Sixth Circuit—at the Site during the time period that Defendants owned or operated it, Plaintiffs have failed to state a viable claim of owner/operator liability under § 107(a)(2).

11

This alone is a sufficient basis for sustaining Defendants' motion to dismiss all of Plaintiffs' CERCLA claims. However, because the Court intends to give Plaintiffs the opportunity to seek leave to amend their Complaint, the Court will address the other alleged pleading deficiencies for the sake of completeness.

### 2. Necessary Response Costs Consistent with National Contingency Plan

In order to state a viable CERCLA claim, Plaintiffs must also allege that they incurred "necessary costs of response. . . consistent with the national contingency plan." *See Regional Airport Auth. of Louisville*, 460 F.3d at 703 (citing 42 U.S.C. § 9607 (a)(4)(B)). The NCP consists of regulations promulgated by the United States Environmental Protection Agency. It establishes certain "standards for the removal of hazardous substances." *Pierson Sand & Gravel, Inc. v. Pierson Twp.*, No. 94-1472, 1996 WL 338624, at *2 (6th Cir. June 18, 1996). Plaintiffs do, in fact, allege that they incurred necessary costs of response consistent with the NCP. *See* Doc. #1, PageID#12. Defendants argue, however, that this conclusory allegation is not supported by well-pleaded facts.

In *Regional Airport Authority of Louisville*, the Sixth Circuit held that "[c]osts are 'necessary' if incurred in response to a threat to human health or the environment." 460 F.3d at 703. "If a party would have incurred identical costs in the absence of any threat, then the presence of the threat cannot be said to have 'cause[d] the incurrence of response costs.'" *Id.* at 706. Defendants argue that Plaintiffs' clean-up efforts were part of a redevelopment plan and were undertaken

12

to make the property attractive to potential purchasers, not in response to any threat to public health or the environment.

The Complaint alleges that "[a]t the time Garrett received title to the Site, the Site . . . was a hazard and menace to the public."  Doc. #1, PageID#7.  It also alleges that Garrett Day "undertook efforts to remediate the contamination of the Property and *protect public health and safety*."  *Id.* at PageID#11 (emphasis added).  Such efforts included identifying potential sources of contamination, investigating the nature and extent of the contamination, preparing a remedial plan, and conducting remedial activities.  *Id.* at PageID##11-12.  Moreover, the Complaint specifically alleges that Plaintiffs incurred necessary costs of response "[a]s a result of releases or threatened releases of hazardous substances at the Site."  *Id.* at PageID#12.  In the Court's view, these factual allegations are sufficient to support a claim that Plaintiffs incurred "necessary costs of response."

Whether Plaintiffs have adequately alleged that these costs were incurred "consistent with the national contingency plan" is a bit closer call.  Defendants cite to several post-*Twombly* cases in which courts have dismissed CERCLA claims containing similar conclusory allegations.  *See, e.g., J&P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co.*, No. 2:11cv37, 2012 U.S. Dist. LEXIS 36497, at *14  (W.D.N.C. Mar. 19, 2012) (holding that, absent factual allegations supporting claim that response costs were consistent with NCP, claim was subject to dismissal); *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp.2d 653, 658 (E.D. Texas 2006) (dismissing CERCLA claim because plaintiff

13

failed to allege a factual basis for its conclusory allegation that it expended response costs consistent with NCP); *Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.*, No. 08-2151, 2010 U.S. Dist. LEXIS 15165, at *10 (D.P.R. Feb. 22, 2010) (dismissing CERCLA claim where "statement is conclusory with respect to the manner in which such measure conforms with the NCP").

Defendants note that, under 40 C.F.R. § 300.700(c)(3)(i), a private party's response action is considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with 40 C.F.R. §§300.700(c)(5) and (6) and "results in a CERCLA-quality cleanup."

Defendants note that Plaintiffs have failed to allege compliance with 40 C.F.R. § 300.700(c)(6), which provides that private parties "should provide an opportunity for public comment concerning the selection of the response action . . ." Plaintiffs impliedly concede that they provided no such opportunity for public comment. They argue, however, that, under the circumstances presented here, this does not necessarily mandate dismissal of their claim. The Court agrees.

In *Bedford Affiliates v. Sills*, 156 F.3d 416, 428 (2d Cir. 1998), *overruled on other grounds by W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 89–90 (2d Cir. 2009), the court held that "the public comment provision functions as an important concern, but not an inflexible requirement. . . . Even the plain language of the National Plan does not mandate public participation; it simply states that private parties 'should' seek public comment. *See* 40 C.F.R. § 300.700(c)(6)." The court further noted that "significant state involvement serves the identical

14

purpose that the public notice provision seeks to effectuate." *Id.* Accordingly, "state participation may fulfill the public participation requirement." *Id.*

Here, Plaintiffs' Complaint alleges that Garrett Day acted "in conjunction with the DSA and the City of Dayton." Doc. #1, PageID#11. It further alleges that DSA is "an agency of the State of Ohio." *Id.* at PageID#2. The question of whether DSA's participation is sufficient to satisfy the public participation requirement may be revisited on a motion for summary judgment. However, for purposes of a 12(b)(6) motion, the Court finds that Plaintiffs' allegations are sufficient to state a plausible claim.

Moreover, Plaintiffs note that the Sixth Circuit has held that certain preliminary investigation and monitoring costs, like those sought by Plaintiffs in this case, are recoverable by private parties regardless of compliance with the NCP. *Pierson Sand & Gravel*, 1996 WL 338624, at *6; *Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 934 (6th Cir. 2004) ("consistency with the NCP is not required for the recovery of *monitoring and investigation costs.*").

For these reasons, the Court rejects Defendants' argument that Plaintiffs' conclusory allegations concerning consistency with the NCP require dismissal of the CERCLA claims.

### 3. § 113(f)

In addition to seeking cost recovery under § 107(a), Plaintiffs allege that Defendants are liable for contribution under § 113(f) of CERCLA. Defendants correctly note that these two subsections contain mutually exclusive remedies.

15

If a plaintiff has a viable § 113(f) contribution claim, it must proceed under that subsection of the statute, rather than § 107(a). *Hobart*, 758 F.3d at 768. *See also United States v. Atl. Research Corp.*, 551 U.S. 128, 139-40 (2007). Although a plaintiff cannot recover under both theories, this does not necessarily mean that a plaintiff is prohibited from pleading in the alternative. Federal Rule of Civil Procedure 8(d)(3) permits a plaintiff to *plead* in the alternative "regardless of consistency."

The question, then, is whether Plaintiffs' allegations are sufficient to state a claim for contribution under § 113(f). Fox River and Neenah Paper argue that, because Plaintiffs have not been sued, and have not alleged that they resolved their liability to the United States or the State of Ohio, they have failed to state a viable contribution claim under § 113(f). The Court agrees.

Under § 113(f)(1), "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." Plaintiffs impliedly concede that this subsection is inapplicable, given that they have not been sued for cost recovery under 42 U.S.C. § 9606 or § 9607(a).

Plaintiffs appear to rely instead on § 113(f)(3)(B), which provides that, "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution" from others

16

who are not parties to that settlement. 42 U.S.C. § 9613(f)(3)(B). In support of their § 113(f)(3)(B) claim, Plaintiffs stand on their allegations that "[a] No Further Action (NFA) letter was issued on February 13, 2012 and a Covenant Not to Sue was granted on July 5, 2012." Doc. #1, PageID#13.

Defendants argue that neither of these documents constitutes "an administrative or judicially approved settlement" for purposes of § 113(f)(3)(B). However, given that the documents have not been made part of the record, the Court cannot make that determination at this juncture.

In their Memorandum in Opposition to Neenah/Fox River Paper Defendants' Motion to Dismiss, Doc. #113, Plaintiffs also cite to a "Memorandum of Agreement" between the United States Environmental Protection Agency ("USEPA") and the Ohio Environmental Protection Agency, [3] whereby the USEPA has agreed not to take action against sites that have completed a voluntary action under Ohio Revised Code Chapter 3746 and that remain in compliance with relevant requirements. The Memorandum of Agreement, however, is not mentioned in the Complaint.

In any event, notably absent from the Complaint is any allegation that Plaintiffs have resolved their CERCLA liability to the United States or the State of Ohio, either in whole or in part. As currently pled, the factual allegations are insufficient to support a finding that Plaintiffs entered into an "administrative or

---

[3] *See* http://www.epa.gov/sites/production/files/2015-09/documents/oh_moa_09_07.pdf.

17

judicially approved settlement" as required to state a viable contribution claim under § 113(f)(3)(B). Plaintiffs' § 113(f) claim is subject to dismissal on this basis.

### 4. Sufficiency of Allegations of Successor Liability (Fox River and Neenah Paper)

CERCLA imposes liability not only on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," 42 U.S.C. § 9607(a)(2), but also on those entities' successors-in-interest. *City Management Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994). In addition to the pleading defects discussed above, Fox River and Neenah Paper challenge the sufficiency of the allegations concerning their alleged liability as successors-in-interest under CERCLA.[4]

#### a. Neenah Paper

Neenah Paper argues that all claims against it must be dismissed because, in its current form, the Complaint contains no factual allegations linking Neenah Paper to the Site. The Court agrees. Although the Complaint contains an exhaustive history tracing ownership and operation of the Site from 1896 through 2010, Neenah Paper's connection to the Site remains unclear.

Plaintiffs do not allege that Neenah Paper itself owned or operated the Site during the relevant time period, and do not explain how Neenah Paper is related to

---

[4] IPC has stipulated that it succeeded to the liabilities, if any, of Defendants Aetna Paper Company, Champion International Corporation, Howard Paper Mills, Inc., and St. Regis Paper Company. Doc. #125.

any of the entities that allegedly did.  Plaintiffs simply allege that "[t]hrough Howard Paper Group, Warrior River, Howard Paper Partners, Howard Paper Mills, Inc. II, and Fox River Paper and/or directly, Neenah Paper owned and operated the Site from 1972 to 1992."  Doc. #1 at PageID#8.  They further allege that "hazardous substances were released and/or disposed of at the Site during . . . Neenah Paper's ownership or operation of the Site."  *Id.* at PageID#12.  Absent any allegations linking Neenah Paper to the Site, there is no legal basis for imposing either direct or successor liability on that corporate entity.

In their memorandum in opposition, Plaintiffs cite to a press release, Neenah Paper's 2007 Annual Report, and Form 10-K, filed with the United States Securities and Exchange Commission, all indicating that Neenah Paper acquired Fox River Paper Company in March of 2007.  These documents are attached as exhibits to the memorandum.  Doc. #113 at PageID##860-67.  Plaintiffs maintain that these documents, combined with the fact that Neenah Paper's counsel accepted service on behalf of the Fox River Defendants, "make reasonable and sufficient the allegation that Neenah is the successor to Fox River Paper."  Doc. #113, PageID#842.

The problem is that there is no such allegation included in the Complaint.  As currently drafted, there is *nothing* linking Neenah Paper either to Fox River Paper, or to the Site itself.  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford*

19

*Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). For these reasons, with respect to Neenah Paper, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted.

### b. Fox River's Successor Liability

According to the Complaint, Fox River Paper entered into an asset purchase agreement with Howard Paper Group in June of 1991, and took over operation of the Site until April 10, 1992, when Fox River sold its assets to Badger Paper Mills, Inc. Doc. #1, PageID##6-7. Fox River does not dispute that it may be subject to liability under CERCLA as an owner/operator for activities that occurred at the Site during that brief time period. However, Fox River argues that, based on the allegations in the Complaint, there is no basis for imposing successor liability for activities that occurred prior to June of 1991.

Ohio corporation law governs the question of successor liability under CERCLA. *City Management Corp.*, 43 F.3d at 250. As a general rule, "the purchaser of a corporation's assets is not liable for the debts and obligations of the Seller corporation." *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993). There are, however, four exceptions to this rule.

> A successor corporation may be held liable when "(1) the buyer expressly or impliedly agrees to assume such liability; "(2) the transaction amounts to a *de facto* consolidation or merger; "(3) the buyer corporation is merely a continuation of the seller corporation; or "(4) the transaction is entered into fraudulently for the purpose of escaping liability." *Flaugher, supra*, 30 Ohio St.3d at 62, 30 OBR at 167, 507 N.E.2d at 334.

*Id.*

20

The Complaint alleges that:

> While the Fox River Paper purchase agreement was labeled as an asset purchase agreement, Fox River Paper took over Howard Paper Mills, Inc.'s business, using the same employees and same production process and creating the same type of paper at the same mill. Following the agreement, Howard Paper Group no longer operated in any capacity except briefly as a lessor of the Site and one machine to Fox River Paper. . . . Fox River Paper retained the trade name "Howard Paper," and its successor continues to produce "Howard Linen Papers."

Doc. #1 at PageID##6-7. In its Memorandum in Opposition to Neenah/Fox River Paper Defendants' Motion to Dismiss, Doc. #113, Plaintiffs argue that these factual allegations are sufficient to state a prima facie claim of a *de facto* merger.

"A *de facto* merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." *Welco*, 617 N.E.2d at 1134. The four hallmarks of a *de facto* merger include:

> (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.* No single factor is determinative, and a *de facto* merger may be found even if not all hallmarks are present. *Cytec Indus., Inc. v. B.F. Goodrich Co.*, 196 F. Supp.2d 644, 658 (S.D. Ohio 2002). Nevertheless, the Supreme Court of Ohio has recognized that the second hallmark—a continuity of shareholders resulting

from a sale of assets in exchange for stock—is "arguably the *sine qua non* of a de facto merger." *H.C.F., Inc. v. Ohio Bureau of Workers' Comp.*, 687 N.E.2d 763, 768 (Ohio 1998); *see also Welco*, 617 N.E.2d at 1134.

Fox River maintains that a mere continuation of manufacturing operations at the Site, using the same employees, is insufficient.  Plaintiffs do not allege that there was any continuation of corporate personnel, or any continuity of shareholders resulting from a sale of assets in exchange for stock.  Nor do Plaintiffs allege that Howard Paper was dissolved immediately after the asset purchase agreement.  In fact, the Complaint alleges that Howard Paper Group thereafter leased the Site and a machine to Fox River from June of 1991 until April of 1992, when it conveyed the Site and the machine to Badger Paper.  Doc. #1, PageID#7.  Moreover, Plaintiffs do not allege that Fox River assumed all of the liabilities and obligations necessary to continue Howard Paper Group's business.  For these reasons, the Court finds that Plaintiffs have failed to state a claim of successor liability against Fox River.

Citing *Opportunity Fund, LLC v. Epitome Systems, Inc.*, 912 F. Supp.2d 531, 542 (S.D. Ohio 2012), Plaintiffs argue that, because they are not privy to the all of the details of the asset purchase agreement,[5] the allegations in the Complaint should be deemed sufficient, and they should be permitted to conduct discovery on this issue.

---

[5]  Fox River notes that Plaintiffs admit that, in pre-suit negotiations, they were given a copy of the asset purchase agreement.  *See* Doc. #113, PageID#845.

22

The Court agrees with Fox River that this case is factually distinguishable from *Opportunity Fund*.    In *Opportunity Fund*, the Complaint may not have contained detailed factual allegations, but the plaintiff did allege a continuity of senior management, and immediate dissolution of the predecessor corporation.  In contrast, Plaintiffs' Complaint in this case does not adequately allege the existence of *any* of the hallmarks of a *de facto* merger.  Absent any factual allegations to support a plausible claim of a *de facto* merger, Plaintiffs are not entitled to discovery.  *See Iqbal*, 556 U.S. at 678-79.

### 5. Leave to Amend

Because it appears that Plaintiffs may be able to fairly easily correct the pleading defects discussed above, the Court DISMISSES the CERCLA claims WITHOUT PREJUDICE, and gives Plaintiffs 20 days from the date of this Decision and Entry to seek leave to file an Amended Complaint.  *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1483 (3d ed. 2010) ("[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."); *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (holding that if there is a "reasonable probability" that the complaint can be saved by an amendment, the district court should dismiss the claim without prejudice and with leave to amend).

**B.    State Law Claims**

Given that the Court has dismissed Plaintiffs' CERCLA claims, it declines to exercise supplemental jurisdiction at this time over Plaintiffs' two state law claims, which seek to recover VAP response costs under Ohio Revised Code § 3746.23, and damages for common law nuisance. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"). Accordingly, Plaintiffs' state law claims are DISMISSED WITHOUT PREJUDICE.

**IV.    Conclusion**

For the reasons set forth above, the Court SUSTAINS Defendant International Paper Company's ("IPC") Motion to Dismiss, Doc. #75, and the Motion to Dismiss by Defendants Fox Valley Corporation, Fox River Paper Company, Fox River Paper Sales Company and Neenah Paper, Inc., Doc. #92.

Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE. Within 20 days of the date of this Decision and Entry, Plaintiffs may move for leave to amend the Complaint to cure the pleading defects discussed herein, if Plaintiffs can do so within the bounds of Federal Rule of Civil Procedure 11. In the meantime, the above-captioned case shall remain pending on the Court's docket. If Plaintiffs do

not seek leave to file an amended complaint within the next 20 days, the Court will terminate the case.[6]

The conference call currently scheduled to take place on March 7, 2016, at 2:30 p.m. is VACATED.


Date: February 29, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[6]   It appears that this Decision and Entry would be dispositive with respect to all claims against all remaining Defendants, and would moot all pending cross-claims. If any party disagrees, it should notify the Court within the next 20 days.