IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARRETT DAY LLC, *et al.*,

        Plaintiffs,

    v.

INTERNATIONAL PAPER CO., *et al.*,

        Defendants.

:

:

:

:

Case No. 3:15-cv-36

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART: (1) MOTION TO DISMISS FIRST AMENDED COMPLAINT BY
DEFENDANTS FOX VALLEY CORPORATION, FOX RIVER PAPER
COMPANY, FOX RIVER PAPER SALES COMPANY, AND NEENAH
PAPER, INC. (DOC. #147); AND (2) DEFENDANT INTERNATIONAL
PAPER COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT (DOC. #148)

---

After spending more than $1.7 million to clean up environmental hazards at

the Site of a former paper mill, Plaintiffs Garrett Day LLC, and Ohio Development

Services Agency ("DSA"), filed suit against more than a dozen defendants. The

First Amended Complaint, Doc. #144, asserts the following claims: (1) cost

recovery under § 107(a) of the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a); (2) cost

recovery under Ohio's Voluntary Action Program ("VAP"), Ohio Revised Code

§ 3746.23(A); and (3) common law nuisance.

This matter is currently before the Court on the Motion to Dismiss First Amended Complaint by Defendants Fox Valley Corporation, Fox River Paper Company, Fox River Paper Sales Company, and Neenah Paper, Inc., Doc. #147, and on Defendant International Paper Company's Motion to Dismiss Plaintiffs' First Amended Complaint, Doc. #148.

## I.    Background and Procedural History

On July 1, 2010, Plaintiff Garrett Day purchased the Site of a former paper mill in Dayton, Ohio.  The Site was allegedly contaminated with numerous hazardous chemicals that were used in the paper-making process over the course of more than 100 years.  Garrett Day, in conjunction with DSA and the City of Dayton, worked to clean up the Site.  They spent over $1.7 million identifying potential sources of contamination, investigating the nature and extent of the contamination, preparing a remedial plan, and conducting remedial activities.

After the City of Dayton assigned to Garrett Day and DSA all claims related to the Site, Garrett Day and DSA filed suit against numerous entities that had owned or operated the paper mill over the years, hoping to recoup some of the cleanup costs.  Defendant International Paper Company's ("IPC's") predecessor companies owned and operated the Site from 1918 until 1972.  Defendants Fox Valley Corporation, Fox River Paper Company, Fox River Paper Sales Company, and Neenah Paper, Inc., (collectively "the Neenah Defendants") owned and operated the Site from 1972 until 1992.

2

The original Complaint asserted claims for cost recovery and contribution under §§ 107(a) and 113(f) of CERCLA, a claim for recovery under Ohio's VAP, and a claim of common law nuisance. On March 1, 2016, the Court issued a Decision and Entry, Doc. #142, dismissing Plaintiffs' CERCLA claims without prejudice, and declining to exercise supplemental jurisdiction over the state law claims. With leave of Court, Plaintiffs then filed a First Amended Complaint, re-asserting all claims except the CERCLA § 113(f) contribution claim. Doc. #144.

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Neenah Defendants have filed a Motion to Dismiss First Amended Complaint. Doc. #147. Defendant IPC has done likewise. Doc. #148. Both motions are fully briefed and ripe for decision.

## II.     Rule 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d

3

471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir.

1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a

defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief

even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d

635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe

the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v.

City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at

476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the

complaint must contain "enough facts to state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the

plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint

must be dismissed." *Id.* Although this standard does not require "detailed factual

allegations," it does require more than "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not

unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions

"must be supported by factual allegations" that give rise to an inference that the

defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

4

III.    CERCLA Claim

Sections 107(a)(2) and (a)(4)(B) of CERCLA provide that "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," shall be liable for "other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. §9607(a)(2) and (a)(4)(B).  The First Amended Complaint alleges that hazardous substances were disposed of at the Site during the time Defendants owned or operated it, thereby subjecting Defendant IPC and the Neenah Defendants to liability for necessary response costs under § 107 of CERCLA.

The Court previously dismissed this CERCLA claim because, although Plaintiffs alleged that hazardous substances were "released" at the Site, they did not adequately allege that hazardous substances were "disposed of" there, as required to establish owner/operator liability.  The Court noted that a "release" is distinguishable from a "disposal."  A "disposal requires evidence of 'active human conduct,' and addresses 'activity that precedes the entry of a substance into the environment.'"  Doc. #142, PageID#1186 (quoting *Bob's Beverage, Inc. v. Acme, Inc.*, 264 F.3d 692, 697 (6th Cir. 2001)).  The Court concluded that Plaintiffs had not sufficiently alleged that, as a result of "active human conduct," any hazardous substances were "discharged, deposited, injected, dumped, spilled, leaked or placed into or on any land or water at the Site so that it could enter the environment."  *Id.* at PageID#1187.

5

The First Amended Complaint attempts to remedy this deficiency.  It again describes the numerous hazardous substances used in the paper-making process over the years, and alleges that these same hazardous substances were found in the soil at the Site.  Doc. #144, PageID##1237-39.  The First Amended Complaint now also alleges that:

> 75.  Each of the hazardous substances used or produced at the Site were disposed of, dumped, discharged, deposited, spilled, placed, and/or leaked at the Site, and into the environment, by the owners and operators of the paper mill from at least 1918 to as late as 2010.

> 76.  In addition, all of the owners and operators of the paper mill generated hazardous substances, as outlined above, that were disposed of at the Site during the operation of the paper mill.

> * * *

> 87.  Through paper-making operations, hazardous substances were disposed of at the Site during International Paper's ownership or operation of the Site and Neenah Paper's ownership or operation of the Site within the meaning of § 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

> * * *

> 89.  During Defendants' operations, there were releases, disposals, and disposals that lead to releases of hazardous substances at the Site . . .

*Id.* at PageID#1240, 1242.

Defendant IPC and the Neenah Defendants argue that these new allegations are conclusory, and are still insufficient to state a claim under § 107(a)(2) of CERCLA.  The Court disagrees.  Paragraphs 75-76 of the First Amended Complaint specifically allege that from 1918 until at least 2010, the owners and operators of

6

the paper mill generated hazardous substances *and* disposed of them at the Site. Construing the allegations in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have adequately alleged affirmative acts of "disposal," as that term has been defined by the Sixth Circuit. They have, therefore, stated a plausible claim of owner/operator liability under §§ 107(a)(2) and (a)(4)(B) of CERCLA.

## IV.   State Law Claims

Plaintiffs' First Amended Complaint asserts two state law claims: (1) cost recovery under Ohio's Voluntary Action Plan ("VAP"); and (2) common law nuisance.

### A.   VAP Claim

The First Amended Complaint alleges that ""[b]eginning in 2010, Garrett, the DSA and the City of Dayton undertook efforts to remediate the contamination of the Site and protect public health and safety," and that these efforts were conducted in accordance with standards established by Ohio's Voluntary Action Plan ("VAP"). Doc. #144, PageID##1240-41. Under the VAP,

> [a]ny person who, at the time when any of the hazardous substances identified and addressed by a voluntary action conducted under this chapter and rules adopted under it were released at or upon the property that is the subject of the voluntary action, was the owner or operator of the property, and any other person who caused or contributed to a release of hazardous substances at or upon the property, is liable to the person who conducted the voluntary action for the costs of conducting the voluntary action.

7

Ohio Rev. Code § 3746.23(B). Pursuant to this statute, Plaintiffs Garrett Day and DSA seek to recover more than $1.7 million in costs of conducting the voluntary action at the Site.

Defendant IPC and the Neenah Defendants argue that only those persons "who conducted the voluntary action" have standing to pursue a claim for relief under the VAP. They note that a July 5, 2012, Public Notice of Covenant Not to Sue/Final Findings and Orders, issued by the Ohio Environmental Protection Agency ("OEPA") lists only Garrett Day and the City of Dayton as the entities who "conducted the voluntary action" at the Site.[1]  Defendants therefore argue that Plaintiff DSA has failed to state a claim for relief under § 3746.23(B).

The Court rejects this argument. Although the First Amended Complaint does not specifically allege that DSA was "a person who conducted the voluntary action," it does allege that "Garrett, the DSA and the City of Dayton" remediated the contamination at the Site, that they "each participated in these efforts . . . and each [] incurred costs or expended monies in this effort for which recovery is sought in this action." Doc. #144, PageID##1240-41.  It further alleges that "Garrett, the City of Dayton, and the DSA have incurred or expended in excess of $1.7 million in the course of conducting a voluntary action pursuant to ORC

---

[1]  *See* http://wwwapp.epa.state.oh.us/legal/pub**not**s/120706.pdf.  In ruling on a motion to dismiss, the Court may consider public records without converting the motion into a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

8

§ 3746.23(A)."  *Id.* at PageID#1243.  In the Court's view, these allegations are sufficient to state a *plausible* claim for recovery by DSA, despite the fact that DSA is not included in the OEPA Final Notice as a person who "conducted the voluntary action at the Site."

Moreover, given that the City of Dayton has allegedly assigned all claims related to the Site to Garrett Day and DSA, the fact that DSA is not included on the OEPA Final Notice does not necessarily mandate dismissal of the claim.  The Court rejects the Neenah Defendants' argument that the facts concerning that Assignment are insufficiently pled.  The First Amended Complaint alleges that, in 2015, "[t]he City of Dayton assigned to Garrett and the DSA any and all claims, demands and causes of action against the Defendants hereto that relate in any way to the Site that is the subject of this lawsuit."  That Assignment "includes those claims and causes of action that are the subject of the instant matter."  Doc. #144, PageID#1241.

The Neenah Defendants complain that, because Plaintiffs did not attach a copy of the Assignment to the First Amended Complaint, the specific terms of the Assignment are unknown.  They further argue that, because it is not clear *which* of the City's claims Plaintiffs are purporting to pursue on the City's behalf, Defendants are hampered in their ability to assert relevant legal defenses, which may differ depending on whether the claim is being brought by a private or public entity.

9

The Court finds that Plaintiffs have adequately pled both the existence and the scope of the Assignment of claims by the City of Dayton. To the extent that there is any ambiguity concerning which claims are being brought on the City's behalf, this can be further explored during discovery.[2]  For the reasons stated above, the Court concludes that Plaintiff DSA has pled a plausible claim for relief under Ohio Revised Code § 3746.23(B).

Citing Federal Rule of Civil Procedure 12(b)(1), Defendant IPC and the Neenah Defendants argue that, even if the Court finds that DSA has stated a plausible VAP claim, it should decline to exercise supplemental jurisdiction over that state law claim.  They cite to Ohio Revised Code § 3746.23(C), which states that a VAP claim "shall be commenced in the court of common pleas of the county in which is located the property at which the voluntary action is conducted." Defendants argue that this subsection expresses the Ohio legislature's "clear preference" that VAP claims be brought in state court.

The Court disagrees.  Section 3746.23(C) is nothing more than a venue provision.  It does not grant exclusive jurisdiction over such claims to the state courts.  Nor could it.  It is axiomatic that states cannot legislate to divest a federal court of jurisdiction.  *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006).  A federal district court may exercise supplemental jurisdiction over state

---

[2]  In light of the allegations that Garrett Day, the City of Dayton, and DSA each incurred response costs, it can reasonably be inferred that Garrett Day and DSA are asserting CERCLA and VAP claims on their own behalf, *and* on behalf of the City of Dayton.  Any ambiguities with respect to the nuisance claim are irrelevant, given that the Court is dismissing that claim, as discussed below.

law claims that are "so related" to the federal claims that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

In this case, the state law claims clearly fall within the scope of this statute, given that they are part of the same case or controversy as the CERCLA claim. Although the court may decline to exercise supplemental jurisdiction in certain circumstances, 28 U.S.C. § 1367(c), none is applicable here.[3]  Therefore, in the interest of judicial economy, the Court will adjudicate both the VAP claim and the common law nuisance claim.

### B.    Common Law Nuisance Claim

Plaintiffs allege that Defendants "created and maintained a continuing nuisance at the Site," causing Plaintiffs to incur abatement costs.  Doc. #144, PageID#1244.  Defendant IPC and the Neenah Defendants argue that Plaintiffs' nuisance claim must be dismissed for two reasons.  The Court agrees on both accounts.

First and foremost, Plaintiffs' nuisance claim is time-barred.  Private nuisance claims are governed by the four-year statute of limitations for general tort claims. *See* Ohio Revised Code § 2305.09(D).  At the latest, Plaintiffs discovered the

---

[3]  "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

11

alleged nuisance when they purchased the property in July of 2010. They did not file suit until January 30, 2015, more than four years later.

Plaintiffs urge the Court to instead apply the five-year statute of limitations set forth in Ohio Revised Code § 3745.31(B). That statute of limitations applies to environmental actions "for civil or administrative penalties of any kind brought by any agency or department of the state or by any other governmental authority charged with enforcing environmental laws." Plaintiffs point out that the City of Dayton, which has assigned its claims to them, is entitled to enforce environmental laws. Nevertheless, Plaintiffs are not seeking "civil or administrative *penalties*." Rather, they seek *compensation* for costs that they have incurred at the Site. Therefore, § 3745.31(B) does not apply, and the nuisance claim is time-barred.

Second, nuisance claims exist to protect the interests of current neighboring property owners. A landowner cannot bring a nuisance claim against predecessors in title for contamination that occurred prior to the purchase of the property. *Dartron Corp. v. Uniroyal Chem. Co., Inc.*, 893 F. Supp. 730, 741 (N.D. Ohio 1995); *Lyden Co. v. Citgo Petroleum Corp.*, No. 1:91cv1967, 1991 WL 325786, at *6 (N.D. Ohio Dec. 5, 1991).

Accordingly, the Court sustains Defendants' motions to dismiss Plaintiffs' nuisance claim, and dismisses that claim with prejudice.

## V. Sufficiency of Allegations of Successor Liability

Plaintiffs seek to hold the Neenah Defendants (Fox Valley Corporation, Fox River Paper Company, Fox River Paper Sales Company, and Neenah Paper, Inc.) legally responsible for all disposals of hazardous substances that occurred at the Site from 1972-1992. The Neenah Defendants concede that they may be liable for conduct that took place from June 1, 1991, until April 10, 1992, when Fox River Paper operated the Site.[4] They deny, however, that Plaintiffs have alleged an adequate basis for imposing liability on them for disposals that took place before June 1, 1991.

On that date, Fox River Paper agreed to purchase the assets of Howard Paper Group. Howard Paper Group and its predecessor, Howard Paper Mills, Inc. II, had owned and operated the paper mill at the Site since 1972. According to Plaintiffs, Fox River Paper's acquisition of Howard Paper Group's assets amounted to a *de facto* merger of the two companies, giving rise to successor liability for disposals that took place at the Site from 1972-1991. *See Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 347, 617 N.E.2d 1129, 1132 (1993) (listing exceptions to the general rule that "the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation.").

"A *de facto* merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous

---

[4] According to the First Amended Complaint, Neenah Paper, Inc., acquired Fox River Paper in March of 2007. Doc. #144, PageID#1234.

business into the successor." *Id.* at 349, 617 N.E.2d at 1134. The four hallmarks of a *de facto* merger are:

> (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.*

The Supreme Court of Ohio has recognized that the second hallmark—a continuity of shareholders resulting from a sale of assets in exchange for stock—is "arguably the *sine qua non* of a de facto merger." *State ex rel. H.C.F., Inc. v. Ohio Bureau of Workers' Comp.*, 80 Ohio St. 3d 642, 648, 687 N.E.2d 763, 768 (1998); *see also Welco Indus.*, 67 Ohio St. 3d at 349, 617 N.E.2d at 1134. Nevertheless, no single factor is determinative, and a *de facto* merger may be found even if not all hallmarks are present. *Cytec Indus., Inc. v. B.F. Goodrich Co.*, 196 F. Supp. 2d 644, 658 (S.D. Ohio 2002).

The Court previously held that Plaintiffs failed to state a claim of successor liability against Fox River Paper. Although they had alleged the continuation of previous business activity, and the continued use of Howard Paper employees, they did not allege the continuation of corporate personnel. Nor did they allege a continuity of shareholders resulting from a sale of assets in exchange for stock, the immediate or rapid dissolution of Howard Paper Group, or the assumption of all liabilities and obligations necessary to continue Howard Paper Group's business.

Doc. #142, PageID#1198. Because Plaintiffs had failed to adequately allege *any* of the hallmarks of a *de facto* merger, the Court concluded that they had failed to state a claim of successor liability.

The First Amended Complaint attempts to remedy these pleading defects. It now also alleges that "[w]hile the Fox River Paper purchase agreement was labeled as an asset purchase agreement, Fox River Paper took over Howard Paper Mills, Inc.'s, entire business. Put another way, the transaction represented a complete acquisition of Howard Paper Group's operations and business by Fox River Paper." Doc. #144, PageID#1233. Press releases indicated that Fox River Paper was "acquiring" Howard Paper Mills. *Id.* at PageID#1234.

According to Plaintiffs, Fox River Paper used the Howard Paper trade name and retained Howard Paper employees. It used the same production process, created the same type of paper, and sold its products to Howard Paper's customers. *Id.* at PageID#1233. "Following the transaction, Howard Paper Group no longer operated in any capacity except briefly as a lessor of the Site and sold one machine to Fox River Paper. Moreover, Howard Paper Group signed a noncompetition agreement, effectively preventing Howard Paper from continuing its business." *Id.*

The First Amended Complaint further alleges that "Fox River Paper directly assumed Howard Paper Group's ongoing contractual obligations, including Howard Paper Group's performance obligations to customers, trade payables, health care and COBRA obligations to employees and warranty liabilities." *Id.* Plaintiffs allege

that Fox River Paper, however, did not assume Howard Paper Group's *environmental* liabilities "which were almost certainly known to the parties at the time." *Id.* at PageID#1234.

The Neenah Defendants maintain that these new allegations are still insufficient to state a plausible claim of a *de facto* merger. Although the First Amended Complaint now alleges that Fox River Paper assumed some of the liabilities and obligations necessary to continue Howard Paper Group's business operations, it is still devoid of any factual allegations concerning the other hallmarks of a *de facto* merger -- continuity of corporate personnel and shareholders, exchange of stock, and rapid dissolution of Howard Paper Group following the purchase of assets.

Moreover, according to the Neenah Defendants, some of the new allegations actually *undermine* the existence of a *de facto* merger. For example, given that the First Amended Complaint alleges that in April of 1992, Howard Paper Group sold the Site to Badger Paper Mills, Inc., Howard Paper Group obviously did not dissolve immediately following the June 1991 asset purchase. Doc. #144, at PageID#1234.

The Neenah Defendants also note that the First Amended Complaint alleges that Warrior River Paper Company, Inc., and Howard Paper Partners, Inc., were general partners of Howard Paper Group. Those entities and their alleged successors, HPP, Inc., Harrison Holdings, L.P., and HPM Investors, Inc., are all named as Defendants in this suit. The Neenah Defendants argue that, "[i]f the

asset purchase had amounted to a 'total absorption' of Howard Paper Group by Fox River, there would be no such successor entities." Doc. #147, PageID#1311.

Plaintiffs also allege that Howard Paper Group signed a noncompetition agreement in connection with the asset purchase agreement. Doc. #144, at PageID#1233. The Neenah Defendants note that there would have been no need for such an agreement had Fox River Paper and Howard Paper Group actually merged. Ohio courts have held that the very existence of a non-compete agreement is inconsistent with a theory of *de facto* merger. *See Welco Indus.*, 67 Ohio St. 3d at 350, 617 N.E.2d at 1134; *H.C.F., Inc.*, 80 Ohio St. 3d at 648, 687 N.E.2d at 768 (finding that a non-compete agreement implies that the selling corporation remained in existence).

One or more of these arguments may ultimately prove dispositive on a motion for summary judgment, but none is dispositive on the pending motion to dismiss. The Court finds that Plaintiffs' allegations of a *de facto* merger are sufficient to state a *plausible* claim of successor liability. Plaintiffs allege the continuation of previous business activity and corporate employees. They also allege that, following the asset purchase, Howard Paper Group held title to the real property, but no longer operated in any other capacity. In addition, Plaintiffs allege that Fox River Paper assumed liabilities and obligations necessary to continue Howard Paper Group's business operations.

True, the First Amended Complaint is still devoid of allegations concerning continuity of corporate personnel, and continuity of shareholders resulting from a

sale of assets in exchange for stock, but this is not surprising. *See Opportunity Fund, LLC v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 550 (S.D. Ohio 2012) (holding that allegations of successor liability were sufficiently pled, and noting that the identity of shareholders of privately-held corporations is not publicly accessible without discovery). As noted above, Plaintiffs need not establish all four hallmarks of a *de facto* merger in order to succeed on a theory of successor liability.

In the Court's view, the factual allegations in the First Amended Complaint are sufficient to put the Neenah Defendants on notice of the claims being asserted and the theories of recovery. The Neenah Defendants are free to challenge those theories once discovery has been conducted. At this juncture, however, the Court concludes that Plaintiffs' First Amended Complaint states a *plausible* basis for imposing successor liability on the Neenah Defendants for activities that took place at the Site prior to June 1, 1991.

## VI. Conclusion

For the reasons set forth above, the following motions are SUSTAINED IN PART AND OVERRULED IN PART: (1) Motion to Dismiss First Amended Complaint by Defendants Fox Valley Corporation, Fox River Paper Company, Fox River Paper Sales Company, and Neenah Paper, Inc. (Doc. #147); and (2) Defendant International Paper Company's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #148).

18

Plaintiffs have stated plausible claims for relief under § 107(a) of CERCLA, and under Ohio Revised Code § 3746.23(B).  They have also asserted a plausible claim of successor liability against the Neenah Defendants.  These claims therefore remain pending.  Plaintiffs' common law nuisance claim, however, is DISMISSED WITH PREJUDICE.

Date: February 15, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

19