UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GARRET DAY LLC, et al., | : | Case No. 3:15-cv-00036 |
| Plaintiffs, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| INTERNATIONAL PAPER COMPANY, et al., | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

The present CERCLA[2] case explores which former owners and operators are responsible for the costs of cleanup efforts undertaken by Plaintiffs Garrett Day LLC and the Ohio Developmental Services Agency at the site of a century-old paper mill in Dayton, Ohio (the Site).[3] Plaintiffs have allegedly spent in the neighborhood of $1.7 million cleaning hazardous substances—trichloroethylene, asbestos, bleaching agents, PCBs (polychlorinated biphenyls), etc.—from the Site. They bring this case against the

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] CERCLA refers, of course, to the Comprehensive Environmental Response, Compensation and Liability Act.

[3] A list of hazardous substances allegedly found at the Site includes, for example, trichloroethylene, asbestos, bleaching agents, Chromium, and Polycyclic Aromatic Hydrocarbons. (Doc. #144, *PageID* #s 1237-40).

Site's former owners and operators asserting claims under (1) Section 107 of CERCLA, 42 U.S.C. §§ 9607(a); (2) Ohio's Voluntary Action Program, Ohio Revised Code § 3746.23(A); and (3) common law nuisance.

Among the many Defendants are Harrison Holdings, L.P.; HPM Investors, Inc.; and HHP, Inc. (the HPP Defendants). They presently seek dismissal of Plaintiffs' First Amended Complaint under Fed. Civ. P. 12(b)(2) for lack of personal jurisdiction. They also seek judgment on the pleadings in their favor under Fed. R. Civ. P. 12(c). The HPP Defendants contend, in the main, that dismissal of Plaintiffs' claims is warranted because the HPP Defendants no longer exist and are, in fact (albeit metaphorically), "dead and buried." This means to the HPP Defendants that they lack the capacity to sue or be sued and are not "persons" within the meaning of CERCLA.

Plaintiffs oppose dismissal for reasons to be explored. But first, more needs to be said about the HPP Defendants.

## II. Factual Background

Accepting Plaintiffs' allegations as true, *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), reveals the following.

### Defendant HPM Investors

In 1972, St. Regis Paper Company sold the Site and related assets to Howard Paper Mills, Inc. II.[4] This entity—Howard Paper Mills, Inc. II—is also known as Defendant HPM Investors. (Doc. #144, *PageID* #1232).

---

[4] Howard Paper Mills, Inc. I was bought in 1960 by St. Regis. (Doc. #144, *PageID* #1232).

### Defendant HPP, Inc.

In 1989, Howard Paper Group acquired Howard Paper Mills II. Plaintiffs understand, upon information and belief, that Defendant HPP was one of the general partners of Howard Paper Group. *Id*. at 1233.

### Defendant Harrison Holdings, L.P.

Defendant Harrison Holdings is formerly known as Howard Paper Group.

### Howard Paper Group

Plaintiffs allege that in June 1991, the Howard Paper Group sold its business (including its right to its trade name) to several Fox River Paper entities (Fox River Paper) through a purported asset purchase agreement. *Id*. Plaintiffs assert, "While the Fox River Paper purchase agreement was labeled an asset purchase agreement, Fox River Paper took over Howard Paper Mills, Inc.'s entire business. Put another way, the transaction represented a complete acquisition of Howard Paper Group's operations and business by Fox River Paper." *Id.*

"Following the transaction, Howard Paper Group no longer operated in any capacity…." (with 2 minor exceptions). *Id*. According to Plaintiffs, "Howard Paper Group signed a noncompetition agreement, effectively preventing Howard Paper from continuing its business." *Id*.

Plaintiffs maintain, upon information and belief, "the most material aspect of the Howard Paper Group that was purportedly not transferred to Fox River Paper was Howard Paper Group's environmental liabilities (which were almost certainly known to

the parties at the time). Put simply, Fox River Paper and Howard Paper Group amounted to a *de facto* merger or consolidation." *Id*. at 1234.

A tiny table attached the HPP Defendants' pending Motion summarizes their description of themselves as "dead and buried":

| Orig. Name | Name Chg. | State | Entity | Formed | Dissolved |
|---|---|---|---|---|---|
| Howard Paper Partners, Inc. | HPP, Inc. | OH | Corporation | 4/30/1991 | 6/29/1992 |
| Howard Paper Mills, Inc. | HPM Investors Inc. | DE | Corporation | 11/16/1971 | 6/29/1992 |
| Harrison Holdings Limited Partnership | NA | DE | Limited Partnership | 9/8/1989 | 6/29/1992 |

(Doc. #177, *PageID* #1611).

### III. Rules 12(b)(2) and 12(c)

The HPP Defendants' reliance on Rule 12(b)(2) to assert that it is dead and buried seems procedurally odd. Rule 12(b)(2) is, of course, the correct procedural tool to use when seeking dismissal for lack of personal jurisdiction. But, such dismissals typically arise from a defendant's lack of minimum contacts with the forum state, not because of a business entity's lack of existential status. This is no less so in CERCLA cases. *Cf. City of Bangor v. Citizens Communications Co*., No. 02-183-B-S, 2003 WL 22183205, at *2 (D.Me. 2003) ("Congress has not provided for nationwide service of process in CERCLA actions except when they are commenced by the United States, 42 U.S.C. § 9613(e).").

Still, the HPP Defendants take a lesson from *AT&T Global Info. Solutions Co. v. Union Tank Car Co.*, No. 2:94cv876, 1998 U.S. Dist. LEXIS 19410, *4 (S.D. Ohio, July 6, 1998), where a CERCLA defendant's motion to dismiss for lack of personal

4

jurisdiction was granted because it was a dead-and-buried company. *Id.* This seems an odd use of Rule 12(b)(2) for it mixed personal jurisdiction into a situation where a claim failed because an essential element was missing—*i.e.*, the dead-and-buried defendant was not a CERCLA "person." And, it is an odd use of Rule 12(b)(2) in the present situation because it frames as a personal-jurisdiction question the HPP Defendants' challenge to Plaintiffs' ability to establish that the HPP Defendants are persons under CERCLA. It is, nonetheless, helpful to recognize that the HPP Defendants argue in favor of evidence-based findings concerning its dissolution. Hence their desire to proceed under Rule 12(b)(2) where the court may consider the pleadings and affidavits to determine whether a personal jurisdiction is established. *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548-49 (6th Cir. 2016).

Regardless of whether the HPP Defendants' present personal-jurisdiction challenge is procedurally correct, two axioms exist: The Court must have personal jurisdiction over the HPP Defendants, and Plaintiffs bear the burden of establishing the Court has personal jurisdiction over the HPP Defendants. *See id*. at 548-49. This burden "is relatively slight" if the Court "relies on written submissions and affidavits…, rather than resolving the motion after either an evidentiary hearing or limited discovery…." *Air Products and Controls, Inc. v. Safetech Intern., Inc*., 503 F.3d 544, 549 (6th Cir. 2007).

The HPP Defendants also seek dismissal under Rule 12(c), arguing that they are entitled to judgment in their favor on the pleadings. A motion for judgment on the pleadings is reviewed under the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *J.H. Routh Packing Co*., 246

F.3d at 851. A complaint survives a motion for judgment on the pleadings when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting, in part, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (other citation omitted)). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting, in part, *Iqbal*, 556 U.S. at 678).

## IV. Discussion

### A. Are the HPP Defendants' Potentially Liable Under CERCLA?

The HPP Defendants, as seen above, argue that they are dead and buried and therefore not subject to CERCLA liability. Plaintiffs contend that the dead-and-buried rule is inconsistent with CERCLA and does not apply in the present case (for various reasons). Plaintiffs further contend that they are entitled to discovery on the issue of whether the HPP Defendants are dead and buried.

CERCLA is designed "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington Northern and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (internal punctuation omitted). "Appreciating the risk that never-ending litigation might impede a 'swift and effective response to hazardous waste sites,' Congress authorized … potentially responsible parties to launch clean-up efforts first, then recover the costs from other responsible parties later—through settlements, consent decrees and, if need be, judgments." *RSR Corp. v. Commercial Metals Co.*, 496

6

F.3d 552, 555 (6th Cir. 2007) (quoting, in part, *Anspec Co., Inc. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1247 (6th Cir. 1991) (other internal citations omitted).

Plaintiffs seek to hold the HPP Defendants liable for their costs under CERCLA provisions that provide, "'any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,' shall be liable for 'other necessary costs of response incurred by any other person consistent with the national contingency plan.'" *Garrett Day LLC v. International Paper Co.*, No. 3:15cv36, 2017 WL 633467, at *2 (S.D. Ohio, 2017) (Rice, D.J.) (emphasis added; quoting, in part, 42 U.S.C. § 9607(a)(2) and (a)(4)(B)); *see* Doc. #161, *PageID* at 1473. CERCLA broadly defines the term "person" to include "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity…," 42 U.S.C. § 9601(21); *see United States v. Atlas Lederer Co.*, 494 F.Supp.2d 649, 656 (S.D. Ohio 2007) (Rice, D.J.).

Recalling the HPP Defendants' contention that they are "dead and buried" and, therefore not persons under CERCLA—what is dead and what is buried? A "dead" business entity is dissolved but has assets that a CERCLA plaintiff might reach. A "dead and buried" entity is dissolved with no remaining assets. *See AT&T Global*, 1998 U.S. Dist. LEXIS 19410, *6. In other words, the operations of a dead business entity have perished and its remaining assets are moribund. A dead and buried business entity is pushing up the daises.

The parties' dead-and-buried contentions present two main issues. The first is an issue of law: whether a dead-and-buried business entity is not a "person" under

7

CERCLA. The second is factual: whether the HPP Defendants are dead and buried.

The U.S. Court of Appeals for the Sixth Circuit has neither addressed nor held that a dead-and-buried business entity is not a person under CERCLA. At least two U.S. District Judges in Ohio have accepted that a corporation cannot be sued under CERLCA once it is dead and buried. *Stychno v. Ohio Edison Co*., 806 F.Supp. 663 (N.D. Ohio 1992) (Bell, D.J.) held, "where 'the funeral is still going on' and 'corporate assets that might be used to pay cleanup costs have not yet been distributed to shareholders' there is no good reason not to hold that corporation liable under CERCLA." *Id*. at 670 (quoting, in part, *United States v. Sharon Steel Corp*., 681 F.Supp. 1492, 1498 (D. Utah 1987)). Relying in part on *Stychno*, the District Court in *AT&T Global*, 1998 U.S. Dist. LEXIS 19410 (Holschuh, D. J.) recognized, "[f]or purposes of CERCLA liability, the weight of authority holds that a corporation cannot be sued once it is both 'dead' and 'buried.'" 1998 U.S. Dist. LEXIS 19410, *5 (citations omitted); *but see Town of Oyster Bay v. Occidental Chemical Corp*., 987 F.Supp. 182, 200 (E.D.N.Y. 1997) ("One line of cases holds that a corporation's dead and buried status is irrelevant to a determination as to whether it can be subject to suit under CERCLA."). Advancing the dead-and-buried rule as an established principle of CERCLA law does not presently assist the HPP Defendants because it remains to be seen whether, as a factual matter, it is dead and buried.

The HPP Defendants argue, "There can be no doubt whatsoever that they are dead and buried as contemplated by *AT&T Global*. Each of them … has been dead for a very long time (since 1992). The entities' former shareholders do not live in Ohio and never lived in Ohio. Each entit[y]'s legal status is a matter of public record…." (Doc. #177,

*PageID* #1614). The HPP Defendants further assert that none of them holds any assets, and none of them has any operations, directors, officers, or employees.

The HPP Defendants, however, overlook the crucial role that discovery plays in determining whether a CERCLA defendant is dead and buried. For example, in *AT&T Global*, the district found the defendant to be dead and buried after ordering the parties to conduct discovery on the issue. The plaintiff, moreover, conceded that discovery had unearthed evidence showing the defendant was dead and buried as of a certain date. 1998 U.S. Dist. LEXIS 19410 ,*5-*6. Permitting discovery was similarly crucial in *Stychno* where the party seeking to impose CERCLA liability was "entitled to determine whether the defendant corporation is both dead and buried." 806 F.Supp. at 670. Similar cases within the Sixth Circuit yield similar results. For example, in *Traverse Bay Area Interm. School Dist. v. Hitco, Inc.*, 762 F.Supp. 1298 (W.D. Mich. 1991) (Gibson, D.J.), discovery was needed as to defendant Parsons' remaining assets. The district court explained:

> [T]he question whether Parsons still holds assets and whether it is a "person" under CERCLA are intertwined. Although an existing corporation is clearly a "person" under CERCLA, a non-existent corporation cannot be included within that definition. In such a case there is no entity to sue or to defend against a lawsuit, and any judgment entered by the court would be unenforceable, much less uncollectible. To use the Gilman court's analogy, although [defendant] Hitco may have shown that Parson's is "dead," in order to fulfill CERCLA's remedial goals, plaintiff is entitled to determine whether the corporation has been "buried." <u>If it is established through discovery</u> that Parsons holds no assets whatsoever, then it no longer exists. In that situation it is not a "person" under CERCLA and no lawsuit can be maintained against it.

762 F.Supp. at 1301-02 (emphasis added).  Following *Hitco*, the plaintiffs in *BASF Corp. v. Central Transport, Inc.*, 830 F.Supp. 1011 (E.D. Mich. 1993) (Gadola, D.J.), "must have the opportunity to conduct discovery in order to determine whether Hughes Chemical still possesses or controls assets that subject it to CERCLA liability." 830 F.Supp. at 1013.

      The same reasoning and result adhere in the present case.  The discovery phase does not close until March 15, 2018.  Meanwhile, the parties should engage in discovery to determine whether or not the HPP Defendants are in fact dead and buried.  Discovery on this question is needed especially when the HPP Defendants rely on evidence outside the First Amended Complaint, including the sworn Declaration of Frederick W. Harrison, who states, "The HPP Defendants have been dissolved, paid their debts, distributed their assets, completely wound up their affairs, and have been inactive for a period of time." (Doc. #177, *PageID* #1620).  Harrison provides additional details.  The problem this evidence creates requires little reflection.  By wandering astray of the pleadings, Defendants have expanded the scope of their Rule 12(c) motion beyond its borders, *i.e.*, the four corners of the pleadings.  Two procedural options exist:  ignore Harrison's Declaration or convert Defendants' Rule 12(c) motion into a motion for summary judgment.  *Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016) (quoting, parenthetically, *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392 (6th Cir. 1975) ("It seems clear then, that if affidavits are filed with the district court, the court must proceed under Rule 56 unless the court decides to exclude the affidavits.")).  It is premature to consider the HPP Defendants' status in the summary-judgment context when months

remain in discovery. Harrison's Declaration, moreover, although it is on the right factual track, might or might not be all it seems. He acknowledges, "I believe that Defendant Harrison Holdings Limited Partnership's assets were distributed within the 1992 calendar year, it owned no property after December 31, 1992 and ceased operations." (Doc. #172 *PageID* #1622). He expresses the same belief as to Defendant HMP Investors. *Id*. at 1621. While his beliefs on these factual matters might prove accurate, only additional discovery will tell the tale. Consequently, judgment on the pleadings is not warranted and conversion to summary judgment would be premature.[5] *Luis*, 833 F.3d at 632.

Accordingly, the HPP Defendants are not entitled to judgment on the pleadings in their favor on Plaintiffs' CERCLA claims.[6]

**B.** **Do State Statutes of Repose Bar Plaintiffs' Ohio Statutory Claim?**

Plaintiffs claim that Defendants are liable for the costs they (Plaintiffs) volunteered to incur in their investigations and cleanup of the Site under Ohio's Voluntary Action Program (VAP), Ohio Rev. Code § 3746.

The HPP Defendants contend that Plaintiffs' VAP claims are barred against each of them under Ohio's and Delaware's statutes of repose. They maintain that Ohio Rev. Code § 1701.88(B) precludes Plaintiffs' claims, no matter when they accrued, because Plaintiffs did not bring them against the HPP Defendants within five years of the

---

[5] Although the HPP Defendants rely on some arguably public records, those records to do not trigger an exception to the four-corner rule because those document do not conclusively speak to all the dead-and-buried circumstances at issue, particularly the factual accuracy (or not) of many of Harrison's assertions.

[6] This conclusion obviates the need to address Plaintiffs' waiver argument and the HPP Defendants' contention that they lack the capacity to sue or be sued.

11

corporation's dissolution.  The HPP Defendants also assert that a similar three-year statute of repose bars Plaintiffs' claims under Del. Code Ann. Title 8, § 278 and Title 6, § 17-803.  The statutes of repose, according to the HPP Defendants, are not preempted by CERCLA and are enforceable.

Plaintiffs contend the Ohio statute upon which the HPP Defendants rely, Ohio Rev. Code 1701.88(B)(2), did not go into effect until May 4, 2012 and specifically instructed that it did not apply to claims arising before that date.   The HPP Defendants counter that even if Plaintiffs are correct, the previously applicable statute, Ohio Rev. Code § 1701.89, provided Ohio common pleas courts with the discretion to stay the prosecution of any action against a dissolved corporation concerning its property.

Plaintiffs correctly find that Ohio Rev. Code § 1701.88(B), by its own terms, is not applicable to the dissolution of the HPP Defendants before May 4, 2012.  Consequently, § 1701.88(B) does not bar Plaintiffs VAP claims against the HPP Defendants.  More significantly—and a point the parties miss—is that the Ohio legislature has chosen to allow more recent VAP claims than a statute of repose would permit:

> The person conducting the voluntary action may commence the civil action at any time after the person has commenced the conduct of the voluntary action.  Notwithstanding section 2305.09 of the Revised Code, a civil action shall be commenced under this section within three years after the applicable no further action letter was submitted to the director of environmental protection under section 3746.11 of the Revised Code in connection with the voluntary action.

Ohio Rev. Code § 3746.23(C).  This three-year limitation period is consistent with Ohio's doubtless desire to promote the cleanup of hazardous substances from its land and to protect its citizens from the perilous health hazards such hazardous substances create.

12

Plaintiffs allege in their First Amended Complaint, "A No Further Action letter was issued on February 13, 2012…." (Doc. #144, *PageID* #1243). Plaintiffs filed the present case on January 30, 2015, within three years of the date the No Further Action letter issued. Consequently, their present VAP claims against the HPP Defendants are not time barred.

Lastly, because Plaintiffs are entitled to conduct discovery about the particular circumstances of the HPP Defendants' death and burial, it is premature to apply any statute of repose to bar Plaintiffs' VAP claims.

Accordingly, the HPP Defendants' are not entitled to judgment in their favor on Plaintiffs' VAP claim.

### IT IS THEREFORE RECOMMENDED THAT:

The HPP Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(c) be DENIED.


November 15, 2017                 *s/Sharon L. Ovington*
                                                           Sharon L. Ovington
                                                           United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within FOURTEEN days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within FOURTEEN days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).