IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARRETT DAY LLC, et al.,

    Plaintiffs,

v.

INTERNATIONAL PAPER
COMPANY, et al.,

    Defendants.

Case No. 3:15-cv-36

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING
DEFENDANT INTERNATIONAL PAPER COMPANY'S
MOTION FOR RECONSIDERATION (DOC. #282)

---

This matter is currently before the Court on Defendant International Paper Company's ("IPC's") Motion for Reconsideration, Doc. #282, of this Court's March 25, 2019, Decision and Entry, Doc. #260. In relevant part, that Decision and Entry sustained Defendant Brownfield Charities, Inc.'s Motion for Summary Judgment, and overruled Defendant IPC's Motion for Summary Judgment.

I. **Background and Procedural History**

All relevant facts and procedural history are set forth in this Court's March 25, 2019, Decision and Entry, Doc. #260, and will not be repeated here. Generally, Plaintiffs Garrett Day, LLC ("Garrett Day"), and the Ohio Development Services Agency ("ODSA") seek to recover expenses incurred in cleaning up

hazardous waste at the site of the former Howard Paper Mill in Dayton, Ohio. Plaintiffs seek relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and Ohio's Voluntary Action Program ("VAP"), Ohio Revised Code § 3746.23.

## II. Motions for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Motions for reconsideration are often treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), if filed within 28 days after the entry of judgment. In this case, however, because no final judgment has been entered, Rule 59(e) is inapplicable. *See Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005) (holding that because there was no final judgment when the court entertained the motion for reconsideration, Rule 59(e) did not apply).

Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). *See also Am. Civil Liberties Union of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (noting that where the district court has not yet entered final judgment, it is "free to reconsider or reverse its decision for any reason.").

2

Typically, however, courts will reconsider an interlocutory order only when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quotation omitted). *See also Northeast Ohio Coalition for Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009) ("Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier.").

## III. Analysis

In its Motion for Reconsideration, IPC argues that several portions of the Court's March 25, 2019, Decision and Entry are clearly erroneous and must be rectified to prevent manifest injustice. For the reasons set forth below, the Court overrules IPC's motion in its entirety.

### A. Timeliness of Motion

As Plaintiffs note, IPC waited almost five months after the Court's Decision and Entry was issued to move for reconsideration. Although there are no time limits for filing a motion for reconsideration, the fact that IPC waited so long to file the motion undermines its claims of clear error and manifest injustice.

### B. IPC's Motion for Summary Judgment

IPC first argues that the Court erred in overruling its Motion for Summary Judgment without prejudice to renewal after expert discovery is completed. It

3

maintains that, given Plaintiffs' lack of evidence that hazardous substances were "disposed of" at the site during the time that IPC's predecessors owned and operated the paper mill, the Court should have simply sustained the motion. The Court rejects this argument.

As it often does in CERCLA cases, the Court, in this case, directed two rounds of summary judgment motions—one for motions based solely on factual or legal issues that do not require any expert witness testimony, and the other for motions that do require expert witness testimony. The Court's March 25, 2019, Decision and Entry addressed only the first round of summary judgment motions.

In that Decision and Entry, the Court acknowledged that it is not enough for Plaintiffs to prove that hazardous substances found at the site in 2010 were the same type of hazardous substances generally used in the papermaking process. Rather, Plaintiffs must prove that hazardous substances were actually "disposed of" at the site during the time that IPC's predecessors owned or operated the paper mill. Doc. #260, PageID#4273.[1]

---

[1] In their Response to the Motion for Reconsideration, Plaintiffs argue that, under CERCLA, they need not demonstrate "that certain releases or disposal[s] occurred during a party's ownership or operation." Doc. #291, PageID#8524. This, however, is contrary to the plain language of the statute, which imposes owner/operator liability on "any person who *at the time of disposal of any hazardous substance* owned or operated a facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) (emphasis added). Accordingly, Plaintiffs must prove that a "disposal" of hazardous substances took place during the time that IPC's predecessors owned or operated the paper mill.
    As the Court previously noted, a "disposal" is different than a "release." Doc. #161, PageID#1473. A "disposal" requires evidence of "active human conduct" and addresses "activity that precedes the entry of a substance into the

4

In its Motion for Summary Judgment, IPC argued that Plaintiffs had presented no evidence to support a finding that hazardous substances were disposed of at the paper mill during the relevant time period.[2] Plaintiffs' lay witnesses, at their depositions, had been unable to identify any *specific* disposals that occurred prior to 1972. Each deferred to the expert witnesses on this subject. IPC argued that Plaintiffs could not rely solely on expert witness testimony to remedy this defect.

The Court noted that it was not surprising that Plaintiffs' lay witnesses could not identify specific disposals. After all, the paper mill had been in operation for more than a century and IPC's predecessors had no involvement after 1972. The Court overruled IPC's motion without prejudice to renewal after expert witness discovery was completed. It stated that "[a]n expert witness, knowledgeable not only about the hazardous substances found at the Site, but also about the paper-making processes, environmental regulations and typical disposal practices, as they existed during each relevant time period, may be able to establish the requisite causal connection." Doc. #260, PageID#4274.

---

environment." Doc. #161, PageID#1473 (quoting *Bob's Beverage, Inc. v. Acme, Inc.*, 264 F.3d 692, 697 (6th Cir. 2001)). To the extent that Plaintiffs, in their Response brief, appear to argue that owner/operator liability can be established merely by a showing that IPC's predecessors operated a paper mill on the site where contaminants were later found, Doc. #291, PageID#8523, they have misconstrued the statute. Again, they must prove that a "disposal" of hazardous substances took place during the time that IPC's predecessors owned or operated the paper mill.

[2] IPC's predecessors owned and operated the paper mill from 1918 until 1972.

5

Citing *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F.3d 1065 (6th Cir. 1999), Defendants had argued that an expert witness opinion that lacks an adequate factual basis is insufficient to create a genuine issue of material fact. The Court acknowledged that, under Fed. R. Evid. 702(b), expert reports must be based on sufficient facts or data. It noted, however, that *Kalamazoo River Study Group* was procedurally distinguishable because, unlike the district court in that case, this Court *has not yet seen* any expert witness reports—they will be the subject of the *next* round of summary judgment motions. The Court noted that IPC was free to challenge those expert witness reports under Fed. R. Evid. 702(b) either in its next summary judgment motion or in a separate *Daubert* motion. Doc. #260, PageID#4275. To the extent that IPC was seeking summary judgment based on Plaintiffs' failure to produce evidence that particular hazardous substances were disposed of during the time IPC's predecessors owned and operated the paper mill, the Court overruled the motion without prejudice to renewal following the close of expert witness discovery. *Id.* at PageID##4275-76.

IPC now argues that the Court erred in so holding. As before, it argues that, absent any evidence that hazardous substances were disposed of at the site during the time IPC's predecessors owned and operated the paper mill, Plaintiffs' expert witness opinions will be speculative at best. IPC further argues that, under these circumstances, it should not be burdened with the expense of a second summary judgment motion.

In support of its argument, IPC cites to three environmental site assessment reports which indicate that no solid waste or hazardous substances were observed on the property, and that the first known spill occurred in 1990. Docs. #221, PageID##2439, 2449; Doc. #256, PageID##4155-56. However, the fact that no hazardous substances were "observed" at the site does not necessarily mean that they were not "disposed of" there. Nor is the fact that there were no known "spills" before 1972 dispositive. CERCLA borrows the definition of "disposal" from the Solid Waste Disposal Act, which defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

If the record were truly devoid of evidence that would support a finding that IPC's predecessors "disposed of" hazardous materials at the site, the Court would agree with IPC that no amount of expert witness testimony could cure this defect. Here, however, there is evidence in the record that would support Plaintiffs' claim. For example, Plaintiffs note that their 30(b)(6) witness, Michael Heitz, testified that the concrete at the site was saturated with PCB oil, and that IPC's predecessors used PCB oil in their paper machine and transformers. Doc. #207, PageID##1924, 1986-87, 2007-08. Given that PCBs were banned by the EPA in 1979, just a few years after IPC's predecessors sold the paper mill, Doc. #246-12, PageID#3800, it

7

could reasonably be inferred that they "disposed of" these hazardous substances at the site.[3]

The Court continues to believe that the question of whether IPC's predecessors disposed of hazardous substances at the site between 1918 and 1972 must be addressed through the lens of expert witness testimony. IPC argues that Plaintiffs should not be given the opportunity to circumvent their evidentiary burden on this essential element of their CERCLA claim through the presentation of an expert witness opinion concerning a particular industry's "typical" or "customary" operations and disposal practices during the relevant time period.[4] IPC again properly notes that an expert's opinion must be supported by a sufficient

---

[3] "Disposal," of course, may be proven through circumstantial evidence. *See Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1271 (10th Cir. 2017) (holding that circumstantial evidence showing that disposal of hazardous waste occurred during a party's ownership or operation may be sufficient to trigger CERCLA liability); *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 892 (10th Cir. 2000) ("CERCLA liability may be inferred from the totality of the circumstances; it need not be proven by direct evidence."); *Franklin Cty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 547 (6th Cir. 2001) ("there is nothing objectionable in basing findings solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain.").

[4] IPC also argues that, if Plaintiffs needed additional time to gather evidence sufficient to defeat the motion for summary judgment, they should have filed a motion under Fed. R. Civ. P. 56(d). Given the two-pronged summary judgment procedure established in this case, there was no need for Plaintiffs to do so. In overruling without prejudice this portion of IPC's Motion for Summary Judgment, the Court essentially found that IPC's arguments were premature, lying outside the scope of the first round of summary judgment motions, and could be renewed after expert witness discovery was completed.

factual basis. At this juncture, however, the Court has not seen the expert witness reports and does not know what evidence the experts have relied upon in forming their opinions. Therefore, it cannot yet determine whether the expert witness reports will be sufficient to create a genuine issue of material fact.

For all of these reasons, the Court adheres to its previous ruling. IPC may renew its arguments in the context of the next round of summary judgment motions.

### C. Brownfield Charities, Inc.'s Motion for Summary Judgment

IPC next argues that the Court erred in granting summary judgment in favor of co-defendant Brownfield Charities, Inc. ("BCI"). BCI never operated a paper mill at the site but owned the property from 2001 until 2010. IPC cites to evidence that disposals, releases and spills occurred during that time period.

Notably, Plaintiffs did not oppose BCI's Motion for Summary Judgment, but IPC did. Even though IPC had not asserted any crossclaims against BCI, it argued that genuine issues of material fact precluded summary judgment on the question of BCI's liability. At that time, Plaintiffs did not object to the filing of IPC's memorandum in opposition. Now, however, Plaintiffs argue that IPC lacks standing to challenge the Court's order granting summary judgment in favor of BCI.

As one court has recently noted, the question of whether, in the absence of a crossclaim, a defendant has standing to oppose a co-defendant's motion for summary judgment, is far from settled. The Sixth Circuit has not addressed this

issue. *See Blackwood v. Cumberland Cty., Tenn.*, No. 2:18-cv-00069, 2019 WL 266673, at *2 (M.D. Tenn. Jan. 18, 2019) (collecting cases).

In this Court's view, regardless of whether IPC had asserted a crossclaim against BCI, it had standing to oppose BCI's motion for summary judgment. It follows that IPC also has standing to ask this Court to reconsider its order granting summary judgment in favor of BCI.

Fed. R. Civ. P. 56 "says nothing about who can oppose a motion for summary judgment." *Coleman v. Anco Insulations, Inc.*, 196 F. Supp. 3d 608, 610 (M.D. La. 2016). It will often be in the interests of judicial economy to allow a co-defendant who has a material stake in the outcome of a particular motion to raise relevant issues at the earliest possible time. *Blackwood*, 2019 WL 266673, at **2-3 (citing *Stone v. Marten Transp., LLC*, No. 3:12-cv-0396, 2014 WL 1666420, at *4 (M.D. Tenn. Apr. 25, 2014)).

Here, because IPC could be held partially liable for BCI's "orphan share" of response costs, it has a material interest in keeping BCI in the case. IPC further notes that, because the Court dismissed all claims against BCI with prejudice, IPC will not be able to assert contribution claims against BCI in the future. For these reasons, the Court finds that IPC has standing to challenge the Court's summary judgment ruling concerning BCI.

Turning to the merits of IPC's motion as it relates to BCI, IPC points to evidence showing that in July of 2003, the Dayton Fire Department responded to a fire caused by oil leaking from a transformer at the site. In June of 2010,

10

Plaintiffs' environmental consultant, Keramida, concluded that this transformer leak had a "likely" impact on the property. Doc. #221-3, PageID#2477. IPC also points to numerous citations issued to BCI between 2003 and 2009, stemming from fires started at the site by homeless individuals. IPC again argues that this evidence is sufficient to create a genuine issue of material fact as to BCI's liability.

Having carefully reviewed the relevant evidence, the Court again concludes that there is no genuine issue of material fact as to BCI's liability for cleanup costs at the site. CERCLA imposes liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). Although BCI owned the site from 2001 until 2010, IPC has pointed to no evidence to support a finding that *hazardous substances* were disposed of at the site during BCI's ownership.

Plaintiffs point out that the 2003 leak involved a "non-PCB" transformer. Citing 40 C.F.R. § 761.3, IPC notes that a transformer may be labeled "non-PCB" so long as contains less than 50 ppm of PCB. Accordingly, IPC contends that the transformer might have contained a small amount of PCB that contributed to the contamination at issue. This, however, is pure speculation.[5] As such, it is insufficient to create a genuine issue of material fact. As to the various other fires

---

[5] As previously noted, PCBs were banned in the late 1970s.

that occurred at the property between 2003 and 2009, IPC points to no evidence that they involved the disposal of any hazardous substances.

Based on the foregoing, the Court again concludes that summary judgment in favor of BCI was warranted.

**D.    Champerty Agreement**

As explained in the March 25, 2019, Decision and Entry, the City of Dayton was the recipient of the Clean Ohio Revitalization Fund ("CORF") grant used to clean up the site of the former paper mill. It incurred oversight costs for the project and provided technical support. These costs may be recoverable under CERCLA. The City of Dayton assigned its claims to Plaintiffs Garrett Day and ODSA in exchange for a portion of any recovery. The Court rejected IPC's argument that this assignment constituted an illegal champerty agreement. Doc. #260, PageID##4289-91. IPC argues that the Court erred in doing so.

The Court again rejects IPC's argument. Champerty is defined as "[a]n agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; specif., an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim." Black's Law Dictionary (11th ed. 2019). In short, the doctrine of champerty does not prohibit *all* assignments of claims in exchange for a portion of the recovery. It prohibits only assignments to an officious intermeddler, *i.e.,* a stranger, with no bona fide interest in the lawsuit.

Here, the City assigned its claims to Garrett Day and ODSA, neither of which is a stranger with no bona fide interest in the lawsuit. In fact, they each seek to recover their own response costs incurred at the site. Under the circumstances presented here, the assignment cannot be deemed champertous.

### E. ODSA's Standing Re: VAP Claim

Finally, IPC argues that the Court erred in holding that Plaintiff ODSA has standing to pursue a claim under the Voluntary Action Program ("VAP"). IPC continues to argue that ODSA is not a "person who conducted the voluntary action" as required by Ohio Revised Code § 3746.23(B). IPC continues to disagree with the Court's ruling that, because ODSA oversaw the cleanup and worked together with the City of Dayton and Garrett Day, ODSA has standing. With respect to the Court's finding that ODSA also stands in the City's shoes by virtue of the assignment, IPC again argues that the assignment is a champerty agreement that is void under Ohio law.

The Court has previously considered and rejected these same arguments. It does so again for the reasons previously explained.

## IV. Conclusion

For the reasons set forth above, the Court OVERRULES Defendant International Paper Company's Motion for Reconsideration, Doc. #282.

Date: December 12, 2019

*[signature]*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE